**Exhibit 5:    Defendant's Responses to Plaintiff's First Interrogatories**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO.: 2:05CV194-T |
| | ) |
| BENTON EXPRESS, INC., et al, | )<br>) |
| Defendants. | ) |

**RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES**

COMES NOW the Defendant, Benton Express, Inc., and in response to Plaintiff's First Interrogatories, states as follows:

### GENERAL OBJECTIONS

Defendant objects to Plaintiff's discovery on the grounds that it is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Defendant objects to Plaintiff's discovery on the grounds that it is not reasonably limited in time or scope.

Defendant will produce information only in its own possession, custody, or control. Defendant cannot produce information in the possession, custody, or control of other entities.

Defendant objects to Plaintiff's discovery to the extent it calls for the divulgence of attorney-client communications, attorney-work product, or any other privileged material.

Defendant objects to Plaintiff's discovery to the extent the instructions contained therein purport to impose duties different from those imposed by applicable law.

All responses given are subject to these objections and any other objections made in the individually-numbered responses. Subject to the foregoing, Defendant responds in good faith to Plaintiff's First Interrogatories as follows:

## PLAINTIFF'S FIRST INTERROGATORIES

1. What is the full name of your company?

**RESPONSE: Benton Express, Inc.**

2. Is your company owned by or a subsidiary of another company? If so, state in full the name of the other company.

**RESPONSE: No.**

3. Has your company ever undergone a FHWA compliance review? If so, what was your rating? (Either satisfactory, conditional or unsatisfactory).

**RESPONSE: Defendant objects to this interrogatory on the grounds that it is not reasonably limited in time and scope and requests information that is of public record and equally available to Plaintiff. Defendant further objects to this interrogatory to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence. However, limiting its response to the time period of 2001 to 2005, Defendant answers that it has undergone such a review and that it has received satisfactory ratings.**

4. Identify all insurance policies covering the truck and trailer involved in the accident. State the amount of coverage for each policy.

**RESPONSE: Defendant has already identified its liability insurance policies with CNA, Zurich, and Lexington as part of its initial disclosures. Defendant believes that these policies provide $1,000,000 in primary coverage and $9,000,000 in excess coverage. The trailer involved in the accident was owned by Trucks, Inc., and Defendant has no knowledge of its insurance coverage.**

5. Was a certificate of insurance filed with the Interstate Commerce Commission and/or the Public Utilities and/or Commerce Commission in the state in which the accident occurred?

**RESPONSE: Yes.**

6. State whether your insurance policies contain the MCS-90 endorsements or the equivalent endorsement required under state law.

**RESPONSE: Defendant objects to this interrogatory to the extent that it is vague and calls for Defendant to make a legal conclusion. Notwithstanding said objections, Defendant will be producing copies of the applicable insurance policies to Plaintiff upon receipt from the insurance carriers.**

7. Please identify the officers, owners and/or business corporation entity responsible for the operation of Pollard Trucking.

**RESPONSE: Defendant has no knowledge regarding Pollard Trucking.**

8. Does Benton Express have a business license issued by the State or from any county in the State of Alabama?

**RESPONSE: No.**

9. Please describe what type of business entity Benton Express is (e.g. a corporation, partnership, etc.).

**RESPONSE: Corporation.**

10. Is your company a common carrier, a contract carrier or a private carrier?

**RESPONSE: Based on its understanding of the listed terms, Defendant believes that it is a common carrier.**

11. Does your company hold a certificate of authority, a license or a permit issued by the Interstate Commerce Commission? If so, state which.

**RESPONSE: Defendant has a permit issued by the ICC.**

12. Do you hold any type of authority, license or permit to engage in intrastate commerce? If so, state what that authority is.

**RESPONSE: Defendant is an interstate carrier. See response to Interrogatory No. 11.**

13. Does your company hold any state authority to engage in intrastate commerce? If so, state what that authority is.

**RESPONSE: Defendant is an interstate carrier. See response to Interrogatory No. 11.**

14. Who was the owner of the tractor/truck/trailer involved in the accident? Give the full name and address of the owner.

**RESPONSE: The tractor was owned by Defendant. The trailer was owned by Trucks, Inc., and used by Defendant under a Transportation Agreement. Trucks, Inc., is located at 105 Short Road, Jackson, GA 30233.**

15. Describe the tractor/truck/trailer by stating the year of its manufacture, manufacturer, and model of configuration.

**RESPONSE: The tractor was a 1998 Volvo WG64T. The trailer was a 1994 Dorsey box trailer.**

16. If you were not the owner of the tractor/truck/trailer involved in the accident, state whether these vehicles were being operated by your company under lease. If you answer is in the affirmative, state the names, addresses and telephone numbers of the person(s) who was the lessor of the tractor/truck/trailer.

**RESPONSE: See response to Interrogatory No. 14.**

17. State the name, address and telephone number of the driver of the rig involved in the accident.

**RESPONSE: The driver was Craig Stephens, deceased.**

18. Was the driver of the 18-wheeler involved in the subject accident a regular employee? If so, state the date that employment began.

**RESPONSE: Defendant denies that Craig Stephens was acting as its employee at the time of the subject accident, but he was hired as a driver by Defendant on or about January 26, 2004.**

19. State whether you have retained a driver qualification file in your company offices for the driver of the vehicle. If so, list each of the documents in that file.

**RESPONSE: Yes. A copy of this file has already been produced as part of Defendant's initial disclosures.**

20. State whether you have knowledge of any traffic violations committed by the driver either while in your employment or previous employment. If your answer is in the affirmative, state what information you have in that regard.

**RESPONSE: Defendant does not have any such knowledge.**

21. State whether you have knowledge of any hours of service violations committed by the driver either while in your employment or in previous employment. If your answer is in the affirmative, state what information you have in that regard.

**RESPONSE: Defendant objects to this interrogatory on the grounds that it is overly broad, not reasonably limited in time and scope, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.**

22. State whether or not your company has a safety director. If so, please state his or her name and full title.

**RESPONSE: Yes. Boyd "Don" Hammonds. Vice President Safety.**

23. State whether your company has written driving standards and/or instructions for it's drivers.

**RESPONSE: Yes.**

24. State the place of origin and the place of destination of the truck involved in the accident.

**RESPONSE: The truck originated at the Pensacola terminal of Defendant and was destined to return to the same terminal after exchanging trailers at the Atlanta terminal of Defendant.**

25. State the exact time when the truck left it's place of origin and what the scheduled arrival time was at the place of destination.

**RESPONSE: The truck left the Pensacola terminal at approximately 6:00 p.m. CDT on Friday, April 8, 2005, and was scheduled to return directly to the Pensacola terminal upon departing from the Atlanta terminal at approximately 12:40 a.m. EDT on Saturday, April 9, 2005.**

26. State whether your company is in possession of the driver's logs for the trip.

**RESPONSE: No.**

27. State whether your company is in possession of the bill of lading, freight bill and expense invoices generated during the cause of the trip.

**RESPONSE: Yes.**

28. State whether the truck/trailer was transporting a load of cargo at the time of the accident. If so, describe the load, state the names, addresses and telephone numbers of the shipper(s) and the names, addresses and telephone numbers of the cosine(s).

**RESPONSE: Yes. See the manifest and bill of lading produced in response to Plaintiff's Request for Production.**

29. State whether the truck/trailer underwent any repairs before or during the trip. If so, state the nature of the repairs and the names, addresses and telephone numbers of the repair facilities.

**RESPONSE: Defendant objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For information regarding maintenance and/or repairs performed on the truck during the six months prior to the accident, see the records produced in response to Plaintiff's Request for Production.**

30. Does your company retain possession of repair and warranty invoices and bills covering the history of the truck/trailer? If no, who does?

**RESPONSE: Yes.**

31. Does the truck involved in the accident have an on-board computer? If so, identify all disks, computer tapes, and other written materials generated by the use of the on-board computer during the trip. Are these items in your company's possession?

**RESPONSE: No.**

32. Have you ever been notified by the truck driver or any law enforcement personnel of a conviction(s) or suspension(s) for violating a state or local law relating to motor traffic control?

**RESPONSE: No.**

33. Do you know whether the truck driver ever reported for duty while having an alcohol concentration of 0.04 percent or greater?

**RESPONSE: To Defendant's knowledge, Craig Stephens never reported for duty with such a blood alcohol concentration.**

34. Has the truck driver ever refused to submit to a post-accident alcohol or controlled substance test required under 49 CFR 382.303, a random alcohol or controlled substance test required under 49 CFR 382.302, a reasonable suspicion alcohol or controlled substance test required under 49 CFR 382.307 or a follow-up alcohol or controlled substance test required under 49 CFR 382.311?

**RESPONSE: Defendant objects to this interrogatory to the extent that it calls for Defendant to draw a legal conclusion regarding the requirements of the cited regulations. Notwithstanding said objection, Craig Stephens never refused to submit to an alcohol or**

controlled substance test while an employee of Defendant.

35.   Does your company do random drug and alcohol testing on your truck drivers?

**RESPONSE: Yes.**

36.   Has the truck driver ever been disqualified from driving a truck while in your employment? If so, when and under what circumstances.

**RESPONSE: Yes. Craig Stephens was disqualified on January 28, 2005, for expiration of his annual violation and review statement.**

37.   If you contend that your company is not liable for this accident, state in exact detail the reasons for that contention.

**RESPONSE: Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and ambiguous so as to preclude a meaningful response and that it attempts to shift the burden of proof to Defendant. Notwithstanding said objections, Defendant denies that it is liable for the subject accident and states that discovery as to Defendant's alleged liability for the accident is ongoing.**

38.   How many employees does this Defendant have?

**RESPONSE: Defendant objects to this interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objections, Defendant currently has approximately 650 employees.**

```
                          _____
                          BENTON EXPRESS, INC.
                          By: Boyd "Don" Hammonds, as its V.P. Safety
```

**STATE OF FLORIDA        )**
**COUNTY OF DUVAL         )**

Before me, a Notary Public in and for said County, in said State, personally appeared, BOYD "DON" HAMMONDS, whose name is signed to the foregoing, and who is known to me and who, being by me first duly sworn and deposed, said that he has knowledge of the facts stated in the foregoing and that the said facts as therein stated are true and correct.

Sworn to and subscribed before me on this the 23rd day of August, 2005.

```
                          _____
                          NOTARY PUBLIC
                          My Commission Expires: _____
```



Sharon A. Oaks
My Commission DD206318
Expires April 26, 2007

_____
Brett A. Ross (ASB-6771-O76B)
Gregory A. Brockwell (ASB-9949-R49B)

Attorneys for Defendant Benton Express, Inc.

**OF COUNSEL:**
CARR, ALLISON, PUGH, HOWARD,
   OLIVER & SISSON, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, Alabama 35216
(205) 822-2006
(205) 822-4058 (Direct Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing upon the following counsel of record by placing same in U.S. mail, addressed as follows and postage prepaid, on this the 26th day of August, 2005:

Jere L. Beasley
LaBarron N. Boone
Julia A. Beasley
BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

_____
Of Counsel