# Exhibit 14 to Plaintiff's Supplemental Opposition to Defendant Benton Express, Inc.'s Motion for Summary Judgment

FOSHEE & TURNER COURT REPORTERS

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE MIDDLE DISTRICT OF ALABAMA
 3                     NORTHERN DIVISION
 4
 5   HAZEL M. ROBY, as Administratrix
 6   of the Estate of RONALD TYRONE ROBY,
 7   deceased,
 8          Plaintiff,
 9                                  CIVIL ACTION FILE
10      vs.
11                                  NO. 2:05CV194-T
12   BENTON EXPRESS, INC., et al.,
13          Defendants.
14
15             VIDEOTAPED DEPOSITION OF
16                  BARRY LYNN WEEMS
17
18              September 26, 2005
19                  11:42 a.m.
20
21            1180 West Peachtree Street
22                    Suite 900
23                 Atlanta, Georgia
24
25      Lisa Fischer, CCR-B-1277, RPR, CRR
```

A Legalink Company * 1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

Page 30

1  particular, your job at Benton, there's a lot
2  depending on the various trucker's personal
3  decisions on how they think they can best
4  accomplish their job?
5      A.  I don't know.
6          MR. BROCKWELL:  Object to the form.
7          If you know what the standard
8      for the whole industry is, then you
9      can answer.
10     Q.  (By Mr. Boone)  I was more
11 specifically talking about Benton as far as
12 when to call in.  I think you've answered this,
13 but when to call in, there's nothing written,
14 is there?
15     A.  I don't know.
16     Q.  Well, nothing you use is -- have you
17 read anything that's in writing, that's why you
18 do what you do?
19     A.  No.
20     Q.  And what you do is just based on what
21 you think from your judgment is the best thing
22 to do under the circumstances?
23     A.  Yes.
24     Q.  And what I'm asking -- what I'm trying
25 to figure out is if somebody told you, we do

Page 31

1  it, Mr. Weems -- I do it, Mr. Weems, this way
2  because I saw it in this handbook, the Benton
3  handbook. They told you -- they said you're
4  supposed to call every hour. And you've never
5  done it that way, but somebody said they do it
6  some other way because of something they saw in
7  writing.
8      A.  No.
9      Q.  And also what I'm trying to get at:
10 Is there anything you do, any of your practices
11 and procedures about communicating with the
12 dispatcher or terminal manager, based on what
13 you've seen in writing?
14     A.  No.
15     Q.  Based on what you do, has it been
16 because some dispatcher said do something at a
17 certain interval, for example, communicate with
18 me every hour? Has that been -- anybody ever
19 told you what to do as far as the amount of
20 communication with the dispatcher or terminal?
21     A.  Yes.
22     Q.  What have you been told?
23     A.  Just what I've already told you. If
24 we break down, we call Jacksonville. If we're
25 delayed and we're going to be late with

Page 97

1   refreshes your recollection, if you remember
2   anything about receiving a manual in that
3   language.
4       A.  Yes.
5       Q.  You have seen that?
6       A.  Yes.
7       Q.  Now, flipping to the page that has
8   Benton Express Bates No. 086 of Plaintiff's
9   Exhibit 2, it says, "Drivers are expected to
10  maintain regular communications with the
11  company while in transit."
12          Have you ever read that information in
13  this policy?
14      A.  No.
15      Q.  Do you know what is meant by "Drivers
16  are expected to maintain regular
17  communications," with an S, "with the company
18  while in transit"?
19      A.  No.
20          MR. BROCKWELL:  Object to the form.
21      Q.  (By Mr. Boone)  Has anybody ever told
22  you that any incident of a driver failing to
23  check in when required shall be assumed to be
24  suspicious and highly irregular?
25      A.  No.

FOSHEE & TURNER COURT REPORTERS

Page 98

1    Q.  Nobody at Benton ever told you that?

2    A.  No.

3    Q.  That you ought to be in regular
4    communication in transit?

5    A.  No.

6    Q.  And that if you wasn't in regular
7    communication in transit, that that would be
8    considered suspicious and highly irregular?

9    A.  No.

10       MR. BROCKWELL: He's already told us
11   about he's been told --

12       MR. BOONE: I'm not asking about
13   back then. Please let him answer
14   the question. I'll let you follow
15   up, and you can clear up anything.

16       MR. BROCKWELL: I'm just stating
17   this, that he's already testified
18   about --

19       MR. BOONE: You can object to
20   the form. Did my question deserve
21   an objection for form, or are you
22   just trying to testify?

23       MR. BROCKWELL: No, I'm not
24   trying to testify. I'm just saying
25   that he has already testified about