IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased, § § § § | |
| Plaintiff, § § | |
| v. § § | CIVIL ACTION NO. 2:05cv494-B |
| BENTON EXPRESS, INC., et al., § § | |
| Defendants. § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT BENTON'S REPLY BRIEF

COMES NOW the Plaintiff in the above styled matter, by and through the undersigned counsel of record, and hereby requests that this Honorable Court deny Defendant Benton Express Inc.'s ("Benton's") Motion for Summary Judgment on all remaining grounds. (Doc. 73). It is noteworthy that Defendant's Motion for Summary Judgment does not address Plaintiff's negligent and wanton hiring, training, and supervision claims. In light of this Court's partial denial of Benton's Motion for Summary Judgment, the only remaining issue is whether the Plaintiff can proceed on her claims alleging negligent and wanton failure to have a communication or tracking system.

Benton's proffered arguments make it patently clear that there exist numerous disputed issues of facts.[1] Where there are disputed issues of facts, a case should not be disposed of by Summary Judgment. *Campbell v. Consumer Warehouse Foods*, 570 So. 2d 630 (Ala. 1990). In determining whether summary judgment is proper, the trial court

---

[1] See disputed facts set out in Plaintiff's Initial Response. (Docket #45).

must view the facts in the light most favorable to the non-movant. *Campbell v. Consumer Warehouse Foods*, 570 So. 2d 630 (Ala. 1990). All reasonable doubt concerning the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Breen v. Baldwin Co. Federal Savings Bank*, 567 So. 2d 1329 (Ala. 1990). Likewise the evidence and inferences from it are to be viewed in a light most favorable to the non-moving party. *Inge v. Nelson*, 564 So. 2d 906 (Ala. 1990).

The backdrop concerning the issues before this Court is a world where terrorism is no longer at our allies' doorsteps, but amongst us. Thus, the issue before this Court is whether Benton has a duty to implement safety measures that will allow it to communicate with or track a lost employee in an 80,000-pound tractor-trailer. Or, stated another way, the issue is whether Benton negligently and wantonly failed to implement safety measures that would allow it to communicate with or track a lost employee in a tractor-trailer that could be used as a weapon of mass destruction. Negligence is the omission to do something, which a reasonable man guided by those considerations, which ordinarily regulate the conduct of human affairs, would do, or the doing of something, which a prudent and reasonable man would not do. *Butler v. AAA Warehousing and Moving Co., Inc.*, 686 So. 2d 291, 293 (Ala. Civ. App. 1996). "Actionable negligence consists in the neglect of the use of ordinary care and skill towards a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect, Plaintiff has suffered injury to his person." *Mobile City Lines, Inc. v. Proctor*, 130 So. 2d 388 (Ala. 1961).

In this case, Benton could not locate its employee in 80,000-pound tractor-trailer for over two days. And at the time of this wreck, GPS technology was widely used in the trucking industry for tracking tractor-trailers.[2] Contrary to the boasting of Benton in its advertising campaign, it had no reliable method to track/locate its employee or equipment. (See Exhibits A and B). Defendant's trucking expert, Bob Tynes, stated that Benton had a duty to have a communication/tracking policy if it so advertises - this alone creates a jury question. (Exhibit C: Tynes dep. p. 270, l. 23 through p. 271, l. 17). More importantly, a jury could determine a reasonably prudent company would have in place some reasonable means to track and locate its employee and its 80,000 pound tractor-trailer in this age of terrorism.

Additionally, Defendant's expert stated that Benton Express had a duty to have the latest technological advances in the trucking industry if it so advertised. (Exhibit C: Tynes dep. p. 270, line 23 – p. 271, line 17). Benton's advertisement states as follows: "[h]ere at Benton, we push to provide the most current technological advancements and use the most modern and well-maintained fleet of equipment." (Exhibit A). When questioned about Benton's duty to have GPS tracking, i.e., the latest technology, Mr. Tynes stated as follows:

> Q. I mean as a person who's experienced in the industry and consults – I'm not talking about regulatory – but it a company promises a customer that it's going to do something, should they do it?
> A. I would think so.
> Q. And if a company advertises that it has the most current and technological advances, should they have it?
> A. Yeah, but that's a pretty broad meaning.
> Q. Right. But you don't advocate a company in lying to customers about what is technological capabilities are, do you.
> A. No. I wouldn't propose that any company lie to its customers.

---

[2] A non-exhausted list of companies using GPS: Werner, Schneider, UPS, Department of Defense, Panthers Two, Express America, Federal Express, and Landstar.

3

> Q. And you would agree that they have a duty, if they say they are going to do something, to do it?
> A. Correct.

(Exhibit C: Tynes dep. p. 270, line 23 – p. 271, line 17). Not only did Defendant's expert state that they had a duty to do what they advertised, he stated that that GPS would have allowed them to locate Mr. Stephens. The following exchange occurred when asked if GPS would have allowed Benton to locate and remove Defendant Stephens from the vehicle:

> Q. Okay. Do you know of any technology that could have allowed them to locate and pinpoint his location and remove him from the vehicle if they wanted to?
> A. If they had employed certain technologies, then certainly there's technologies to locate a truck.
> Q. And what type of technologies is that?
> A. Well, like Qualcomm or something like that.
>
> Q. Okay. The companies who are trying to track their trucks, they could've located Mr. Craig Stephens and found him?
> A. Yes, if it was equipped with Qualcomm or some other type of system like that.

(Exhibit C: Tynes dep. p. 158, line 5 – 14; p. 160; l. 16-20; See also p. 251, l. 20 – p. 252, l. 7). Bill Jones testified if he would have located Defendant Stephens he would have been removed from the vehicle. (Exhibit D: Jones dep. p. 89, lines 5-8; p. 116, line 24 – p. 117, line 3). Based on the above, Benton had a duty to track is vehicle and if Benton had not breached its duty, this wreck would not have occurred.

As stated in Plaintiff's initial brief, a duty may be derived from statutory law, common law, by undertaking,[3] or by industry standards.[4] Benton tries to trivialize the significance of its advertising, which states they have the latest in technology to track its

---

[3] Addressed in Plaintiff's Initial Response (Docket # 45).
[4] Addressed in Plaintiff's Initial Response (Docket # 45).

4

vehicles. However, regardless of Defendant's attempt to disassociate itself with its own advertising, the law is clear that you can voluntarily undertake a duty. In this case, Mr. Tynes, Benton's trucking expert, stated that the Defendant has a duty to implement reasonable safety policies and procedures to protect the motoring public. (Exhibit C: Tynes dep. p. 213, line 5-12). He further agreed that they had a duty to enforce safety policies and procedures. (Exhibit C: Tynes dep. p. 213, line 5 through p. 214, line 1). Plaintiff has at the very least created a question concerning whether Benton had a duty to have in place policies and procedures that would allow it to track/communicate with its vehicles/employees.

Further, Plaintiff's expert will opine that any reasonable trucking company should have methods in place to track its vehicles/employees (See Exhibit E; Brown dep. p. 137, l. 19 – p. 139, l. 9; p. 143, l. 4 – p. 145, l. 1; see also Exhibit F; affidavit of Roland Brown; and Exhibit G; Plaintiff's Expert Submission). This ability to track it vehicles/employees is particularly important when Defendant Benton is taking the position that its employee, Craig Anthony Stephens, was out of the line and scope of his employment. To have lost, for approximately two days, an employee in an 80,000-pound tractor-trailer that could be used as a weapon of mass destruction is negligent and/or wanton. Under these facts, a jury could hold Benton liable for it failure to implement reasonable measures and procedures to locate its missing vehicle and employee.

Accordingly, Benton's Motion for Summary Judgment, regarding the negligent and wanton failure to have a communication/tracking policy, should be denied.

                                               LABARRON N. BOONE
                                               Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 (Telephone)
(334) 954-7555 (Facsimile)


### CERTIFICATE OF SERVICE

     I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record as shown below on this the 15th day of February 2006.

                                               OF COUNSEL


Gregory A. Brockwell
Brett A. Ross
Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, AL 35216