**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | |
|---|---|
| **HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased,** ) ) ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.: 2:05CV494-T** |
| ) | |
| **BENTON EXPRESS, INC., et al,** ) | |
| ) | |
| **Defendants.** ) | |

---

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL EXHIBITS**

---

COMES NOW the Defendant, Benton Express, Inc., and, pursuant to the Court's scheduling order, states the following objections to the Plaintiff's proposed trial exhibits:

**I.  INTRODUCTION**

Despite representing that the trial of this action will take only two days, the Plaintiff has listed 580 exhibits that she intends to offer at trial.  From reviewing the Plaintiff's exhibit list, it is apparent that she created the list by merely copying and pasting a spreadsheet containing each and every document that has been produced in this case.  No apparent attempt has been made by the Plaintiff to limit her exhibit list either to exhibits that are relevant to the issues to be tried or to those exhibits that the Plaintiff actually intends to offer at trial.  For these reasons, Defendant must state the numerous objections below for fear that the objections will be waived if not stated here.

**II.  OBJECTIONS**

1.  **Plaintiff's Exhibits Nos. 1 through 217; 517; 536; 545; 550; 558; and 559**: The Plaintiff intends to offer as exhibits the accident report and the full "Traffic Homicide File"

prepared by the Montgomery Police Department.  The documents include the conclusions and opinions of the police regarding the events of the accident.  The documents also include statements taken from witnesses to the accident and photographs of the accident scene, including photographs of the corpses of Craig Stephens and Ronald Roby.

The accident report prepared by the Montgomery Police Department in this case was prepared pursuant to the requirements of the Alabama Code. Ala. Code § 32-10-7 (1975). Such accident reports are prepared subject to other provisions of the Code.  Specifically, the Alabama Legislature has determined that no traffic accident report "shall be used as evidence in any trial, civil or criminal, arising out of an accident." Ala. Code § 32-10-11 (1975).  This statute has been held to render all traffic accident reports per se inadmissible in Alabama, regardless of whether or not they would otherwise fall under the "public records" exception to the hearsay rule. Mainor v. Hayneville Telephone Co., 715 So. 2d 800, 802 (Ala. Civ. App. 1997).  Thus, the "Traffic Homicide File," including the opinions and conclusions of the officers and the statements of witnesses, is inadmissible.

Even if the Alabama Code did not preclude the file from being admitted at trial, the file contains numerous hearsay statements that must still be excluded.  The Federal Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  The general rule is that hearsay is not admissible. Fed. R. Evid. 802.  The traffic homicide file contains statements and conclusions of the police officers who investigated the accident and several eyewitnesses who saw the accident.  Such statements are being offered by the Plaintiff to prove the truth of the matter asserted, i.e., that the subject accident was the fault of Craig Stephens.  As such, the file is inadmissible under Rule 802.

The police officers who investigated the subject accident were not witnesses to the accident and have no first-hand knowledge of it.  The Rules of Evidence provide that "a witness

2

may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Because the investigating officers have no personal knowledge of the events of the accident, their statements and conclusions regarding the accident are due to be excluded from trial. Of course, an expert may testify without personal knowledge. However, the investigating officers have not been qualified as experts, nor have they been disclosed as experts under Rule 26.

The file includes the statement of Johnny Pollard. Mr. Pollard last saw Craig Stephens' vehicle sixteen (16) miles from the accident scene. Mr. Pollard did not observe any of the events of accident and has no personal knowledge of them. Furthermore, his observations of Mr. Stephens' driving several miles prior to the accident are irrelevant to the accident itself. The Plaintiff's accident reconstruction expert admitted in her deposition that a person's driving several miles prior to an accident has nothing to do with the accident itself. Specifically, Ms. Stirling testified as follows:

> Q. Does the fact that there were other motorists calling in about Mr. Stephens' driving prior to this accident, does that have anything to do with your opinions in this case?
>
> A. Don't think I used that for any of my analysis, no.
>
> Q. Have you ever encountered a case in your experience where just because someone was driving badly ten miles down the road, they weren't necessarily at fault in an accident later on?
>
> A. I'm sure I have.
>
> ...
>
> Q. I guess the point of may question is that if someone swerves ten miles before an accident, does that mean that they're necessarily going to get in an accident later on down the road?
>
> A. No.
>
> Q. Does that necessarily mean that if they do get in an accident, that it's going to be their fault when they get in an accident then miles down the road?

3

A.    No.

Q.    And what you have to do as an accident reconstructionist is look at the evidence of the actual accident; is that correct?

A.    Yes.

Q.    And what happened in the immediate time and distance around the accident; is that correct?

A.    Yes.

[Deposition of M.P. Stirling, p. 85:3 - 86:14, excerpts of which are attached hereto as Exhibit 1].

Thus, based on the testimony of the Plaintiff's own expert, Craig Stephens' driving up the road from the accident scene has nothing to do with the accident itself.  Since Johnny Pollard only observed Mr. Stephens' driving several miles up the road from the accident, his statements are irrelevant in that they have no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.  Because it is irrelevant, the evidence is inadmissible. Fed. R. Evid. 402.  Furthermore, even if the evidence could be said to be relevant, its probative value is substantially outweighed by the danger of unfair prejudice to Defendant, confusion of the issues, or misleading the jury. Therefore, even if relevant, the evidence must be excluded under Rule 403.

Finally, the file contains gruesome photographs of the mangled corpse of the Plaintiff's decedent, Ronald Roby.  It is undisputed that Mr. Roby was killed in the accident.  There certainly is no question as to the cause of his death.  Specifically, though his body later burned, he died instantly from blunt force trauma in the collision.  Furthermore, pictures of his dead body will not assist the jury in determining how the accident occurred or who is at fault for the accident.  The photographs simply have no probative value in this case, and they therefore are irrelevant and must be excluded from trial.  The only possible reason for the Plaintiff's proffered admission of the photographs is to inflame the jury against Defendant.  Even if the photographs

did have some probative value, it would be substantially outweighed by the prejudice such graphic and horrific images would cause Defendant. Accordingly, any photographs depicting the dead body of Ronald Roby are due to be excluded from trial.

2. **Plaintiff's Exhibits Nos. 335 through 375**: The Plaintiff intends to offer as exhibits "scene photos" and "aerial scene photos." For the grounds discussed above in Objection 1, Defendant objects to the admission of any such photographs which depict the dead body of Ronald Roby.

3. **Plaintiff's Exhibit No. 376**: The Plaintiff intends to offer as an exhibit "Liberty Mutual Trucker Survey Identifies Top Practices in Fleet Safety." [A copy of this document is attached hereto as Exhibit 2 for the Court's reference]. The document is purportedly a survey of trucking companies that are insurance customers of Liberty Mutual Insurance. Only 86% of the surveys sent out by Liberty Mutual to its customers were returned. It contains a discussion of various things that Liberty Mutual considers "Best and Industry-Accepted Practices" for the trucking industry. Among the areas covered are "employee selection," "safety programs," "communication and policy enforcement," "training," and "goals and strategy." Ostensibly, the Plaintiff intends to use this document at trial in the same manner the Plaintiff has used it thus far – to support the Plaintiff's claim, through her expert, that Defendant had a duty to equip its trucks with satellite-based tracking devices. To that end, the document states, "Almost half of the companies [that responded to the survey] have GPS."

The Plaintiff intends to offer the document to prove the truth of the matter asserted. That is, the Plaintiff intends to offer the document to prove that "almost half of the companies have GPS." As such, the document falls within the definition of hearsay and is due to be excluded from evidence.

The Plaintiff might argue that the document falls within the business record exception to the hearsay rule. Rule 803(6) of the Rules of Evidence provides that a "memorandum, report,

5

record, or data compilation" that is "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make" may be admitted into evidence, although hearsay, "unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). There is nothing "trustworthy" about the Liberty Mutual survey. At best, it is based on the responses of 86% of Liberty Mutual's customers and vaguely indicates that "almost half" of these customers "have GPS." The Plaintiff has offered no evidence regarding the survey's methodology or proving the survey's reliability. We have not seen the survey questionnaire, and we do not even know the form of the question asked to Liberty Mutual's customers that allegedly prompted "almost half" of the 86% who responded to indicate that they "have GPS." Moreover, we do not even know what specific percentage constitutes "almost half." Is it 49.9%? Perhaps 40%? We cannot know because the Plaintiff has offered only the conclusory statement of "almost half."

Other courts have been faced with the issue of admissibility of such surveys. In the case of Broadcast Music, Inc. v. Xanthas, Inc., the United States Court of Appeals for the Fifth Circuit addressed a case in which the plaintiff sought to prove the defendant's ownership of jukeboxes in various business locations by offering into evidence information gleaned from surveys sent by the plaintiff to various business establishments. Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 237 (5th Cir. 1988). The survey respondents did not testify. Id. The defendant objected to the evidence from the surveys, arguing that it was inadmissible hearsay. Id. The plaintiff argued that the surveys were admissible under the business record exception, alleging that it "drafted and mailed the questionnaires as part of its 'regularly conducted business activity.'" Id. at 238. The Fifth Circuit held that the trial court erred in admitting the evidence. In support of this holding, the appellate court stated that the survey responses "do not fall within the exception making business records admissible." Id. The court noted that:

> The information presented as evidence came not from [the
> plaintiff] but from proprietors of establishments with jukeboxes.
> Nothing in this record shows that the proprietors completed these
> forms in the course of their regular business activities.  Even
> assuming the proprietors had filled out such forms regularly, this
> would not show that they were kept 'in the regular course of
> business' under Rule 803(6), as the Supreme Court held in
> *Palmer v. Hoffman*.

Id.

In another case, the United States District Court for the Southern District of New York

addressed a dispute between two pharmaceutical companies over allegedly false advertising.

Ortho Pharceutical Corp. v. Cosprophar, Inc., 828 F. Supp. 1114 (S.D.N.Y. 1993).  The plaintiff

company alleged that the defendant company was falsely advertising its "anti-age" products

and sought to have the court enter an injunction to prevent additional advertising, among other

remedies. Id. at 1116.  In support of its claims, the plaintiff sought to introduce three surveys.

Id. at 1119.  The court ruled that the surveys constituted inadmissible hearsay, while the plaintiff

argued that they fell under the business records exception of Rule 803(6). Id.  In support of its

ruling, the court provided a lengthy discussion of the admissibility of such surveys.  The court

noted that "the hallmark of documents admitted under the business records exception is that

they are trustworthy and credible." Id.  The court recognized that reliable surveys might fall into

this exception, but that, to be admissible, they must be proven to meet certain criteria:

> A survey is considered to be properly conducted if the survey was
> fairly and scientifically conducted by qualified experts and
> impartial interviewers, if the study drew responses from a sample
> of a relevant portion of potential customers, if the questions upon
> which the results relied do not appear to be misleading or biased,
> and if the recordation of responses was handled in a completely
> unbiased manner.

Id. at 1122 (adopting test established in Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri,

Inc., 758 F. Supp. 512, 524 (E.D. Mo. 1991)).  In the case, the plaintiff did not offer evidence

"elaborating on procedure, methodology, or accountability" of the surveys. Id. at 1120.  The

court also noted that "the court cannot be assured of the accuracy of the document. Nor can the court or opposing counsel investigate the accuracy of the material, which was and is being offered for the truth of its contents." Id. at 1119-20. Because of these issues, the court stated that it could not conclude that the surveys were "properly conducted," and therefore the court held that "the surveys are inadmissible hearsay. Id. at 1122.

In the instant case, the Plaintiff has offered no evidence to satisfy the test set out in the Ortho case. There is no indication whatsoever of the reliability or trustworthiness of the Liberty Mutual survey. Accordingly, the document does not fit within the business records exception to the hearsay rule and must be excluded from trial.

Beyond being inadmissible hearsay, the Liberty Mutual survey also is irrelevant. Evidence is irrelevant if it fails to have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. As noted above, the Liberty Mutual survey states that "almost half" of trucking companies that are its customers "have GPS." Thus, according to the survey, only a minority of its customers have GPS. The fact that a majority of Liberty Mutual's customers do not have GPS fails to make the issue of whether having a satellite-based tracking system is an industry standard "more probable or less probable." The survey's only probative value (and this is a stretch, given the survey's apparent lack of reliability) would be to show that some of Liberty Mutual's customers "have GPS." Whether or not Liberty Mutual's customers have GPS is of no consequence to this action. Defendant certainly is not a customer of Liberty Mutual, and Defendant cannot be judged by what technology some of Liberty Mutual's customers might have. Because the survey is irrelevant, the evidence is inadmissible. Fed. R. Evid. 402.

Even if the survey had some relevance to this action, it still would have very little probative value. The survey cannot even be used to prove that a majority of Liberty Mutual's customers have GPS, much less the entire trucking industry. If anything, the survey is

8

evidence only that having GPS is <u>not</u> the industry standard.  Therefore, the admission of the survey for the Plaintiff's intended purpose would serve only to confuse the issues and to mislead the jury, thereby causing Defendant prejudice.  Accordingly, even if relevant, the evidence should be excluded under Rule 403.

Finally, the survey was created by Liberty Mutual Insurance Company, which is a liability insurance carrier for trucking companies.  Allowing the admission of the survey would be an improper injection of liability insurance into the case and should not be allowed under Rule 411.

**4.  <u>Plaintiff's Exhibits Nos. 382 through 463; and 554</u>**: The Plaintiff intends to offer as exhibits numerous documents from Craig Stephens' personnel and driver qualification files. These documents include Mr. Stephens' application for employment and all documents relating to his pre-employment screening and qualification for employment with Benton Express.  The only claims in this case are for vicarious liability and failure to have and/or enforce communications and tracking systems.  The Plaintiff has not stated claims for negligent hiring, supervision (apart from the communications issue), or entrustment.  Furthermore, it is undisputed that Craig Stephens was an employee of Defendant up until the time that he abandoned his employment prior to the accident.  The parties certainly should be able to reach stipulations regarding Mr. Stephens' date of hire and employment status prior to going AWOL. Accordingly, there is no need for Mr. Stephens' personnel and driver qualification files to be admitted into evidence.  Such documents are irrelevant to any claim and are due to be excluded.

**5.  <u>Plaintiff's Exhibit No. 467</u>**: The Plaintiff intends to offer as an exhibit "Benton Express, Inc. Driver's Time Sheet for Craig Anthony Stephens for 4/4/05 - 4/8/05 with notation 'employee killed in traffic accident 4/11/05.'" [A copy of this document is attached hereto as Exhibit 3 for the Court's reference].  Defendant's road drivers are paid by the mile.  The document is a "work sheet" used by the terminal to calculate a driver's mileage for a given time

period.  The driver is then paid based on that mileage.  Of note is that the last mileage the work

sheet shows Craig Stephens driving on behalf of Defendant was his trip from Pensacola to

Atlanta on April 8, 2005.  The work sheet does not reflect any mileage driven for Defendant on

the date of the accident, April 11, 2005, or that Craig Stephens was paid for driving on that

date.

The document does note "employee killed in traffic accident on April 11, 2005."  Thus,

the Plaintiff's only apparent purpose in offering the document is in an attempt to mislead the

jury into believing that some unknown person writing the word "employee" to describe Craig

Stephens amounts to an admission of liability in this case.  It is undisputed that, until he went

AWOL, Mr. Stephens was an employee of Defendant.  The fact that someone used that word to

describe him shortly after his death is probative of nothing and therefore is irrelevant as it has

no tendency "make the existence of any fact that is of consequence to the determination of the

action more probable or less probable." Fed. R. Evid. 401.  Because the evidence is irrelevant,

it is inadmissible. Fed. R. Evid. 402.  Even if relevant, the document has such limited probative

value that it must be excluded due to the unfair prejudice, confusion of the issues, and

misleading of the jury it would cause. Fed. R. Evid. 403.

**6.    Plaintiff's Exhibit No. 473**: The Plaintiff intends to offer as an exhibit "maintenance

records" for the vehicle driven by Craig Stephens at the time of the accident.  The Plaintiff has

not made a claim for negligent maintenance, and no one has blamed the subject accident on

any maintenance issue.  Accordingly, the records are irrelevant and should be excluded from

trial.

**7.    Plaintiff's Exhibit No. 474**: The Plaintiff intends to offer as an exhibit the "DOT

Accident Registry" maintained by Benton Express that lists the accident that is the subject of

this case. [A copy of this document is attached as Exhibit 4 for the Court's reference].  As

required by the federal Department of Transportation regulations, Defendant maintains a list of

accidents involving its trucks that occur in a given year.  The 2005 accident registry has been produced by Defendant in this case, and it lists six (6) accidents, including the subject accident.

The only possible purpose for the Plaintiff attempting to admit the accident registry would be to show the jury that Defendant's trucks were involved in several accidents in 2005. Such evidence would be inadmissible evidence of other acts under Rule 404(b).  Furthermore, whether or not Defendant's trucks have been involved in other accidents is irrelevant to the instant case and must be excluded.  Finally, the document has no probative value on whether or not Defendant is liable for the subject accident (or any of the other accidents) as it merely indicates that a truck owned by Defendant was involved in each accident.  It is undisputed that the truck driven by Craig Stephens was owned by Defendant.  Accordingly, the document's nonexistent probative value is substantially outweighed by the prejudice that would be caused Defendant if the jury were to consider the document.

**8.  <u>Plaintiff's Exhibit No. 475</u>**: The Plaintiff intends to offer as an exhibit "fuel tax records" of Benton Express.  Defendant's payment of fuel tax is not at issue in this case, and all fuel tax records are irrelevant and therefore inadmissible.

**9.  <u>Plaintiff's Exhibits Nos. 476 through 484; 488 through 494; 523; and 540</u>**: The Plaintiff intends to offer as exhibits "trip logs," "over the road manifests," "time cards," and "daily driver trip logs" of Craig Stephens dating back several weeks (even months) prior to the subject accident.  Defendant's drivers, including Craig Stephens, are required to maintain logs of their time under the federal DOT regulations.  Such documents could only be relevant, if ever, if there were a claim for negligent entrustment or negligent supervision (apart from the communications issue).  The Plaintiff has not stated any such claims.  Therefore, Mr. Stephens' logs, manifests, and the like are irrelevant to any issue in this case and must be excluded from trial.

    **10.**  **Plaintiff's Exhibits Nos. 485 through 487**: The Plaintiff intends to offer as exhibits "Benton Express, Inc. Notice of Violation of Driving Hours for Craig Anthony Stephens" and "driver summary reports for Craig Anthony Stephens for 2/12/05 - 3/4/05 and 3/5/005 - 3/18/05." These documents represent the Plaintiff's attempt to have admitted evidence of some potential logbook problems that Craig Stephens had during the course of his employment with Benton Express.  Again, as noted in Objection 9, the Plaintiff has not stated claims for negligent entrustment or supervision or anything similar.  Accordingly, any logbook problems Mr. Stephens may have had are irrelevant to the issues set for trial and must be excluded from evidence.

    **11.**  **Plaintiff's Exhibits Nos. 495 through 503**: The Plaintiff intends to offer as exhibits documents evidencing third-parties' claims against Benton Express for the freight that was destroyed in the accident.  It is undisputed that Craig Stephens was pulling a trailer containing freight that belonged to Benton Express' customers at the time of the accident.  It is also undisputed that this freight was destroyed in the accident and that the various owners of the freight have made claims against Benton Express for the lost freight.  Finally, it is undisputed that Benton Express has paid monetary settlements in satisfaction of some of these claims.

    The Plaintiff's only intent in offering evidence of payment of these freight claims is to attempt to show that Defendant has admitted liability in this case by settling the claims.  The Rules of Evidence clearly require the exclusion of such evidence.  Rule 408 provides

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed. R. Evid. 408.  Because Defendant's payment of the claims was merely a settlement of those claims, the evidence is inadmissible.

Evidence of the freight claims and of Defendant's payment of them also is irrelevant. There is no allegation that the Plaintiff lost any freight in the accident or has ever been a customer of Defendant. The Plaintiff's only claim is for the wrongful death of her husband. The loss of any freight simply is not "of consequence" to any issue set for trial, and therefore the evidence must be excluded as irrelevant.

**12.** <u>**Plaintiff's Exhibit No. 504 and 514**</u>: The Plaintiff intends to offer as exhibits what are represented as two separate documents: one an "Insurance Institute for Highway Safety Article," and the other "Fatalities of Fact." Defendants believe that these purportedly separate documents are actually the same thing, as the Insurance Institute article is entitled "Fatality Facts." [A copy of this article is attached hereto as Exhibit 5 for the Court's reference]. Defendant certainly is not aware of any other document so named. The Insurance Institute for Highway Safety (the "Institute") is not a governmental or otherwise public agency or organization. Rather, it represents itself as a "research and communications organization funded by auto insurers." <u>See</u> <www.iihs.org/about.html>. The Institute states that "supported by auto insurers, the Institute is uniquely positioned to influence highway safety issues." <u>Id.</u> Moreover, "reducing [death, personal injury, and death] losses is why the Institute exists." <u>Id.</u>

Though its purpose may be noble, there is no question that the Institute has its own agenda and is far from an objective, unbiased organization. The worse the Institute can make highway and vehicle safety look, the better the Institute serves its purpose of raising public awareness of its agenda. A quick browse of the Institute's website reveals that it uses a variety of tools in support of its agenda, including vehicle safety ratings, videos, and pamphlets.

One part of the Institute's propaganda machine is the "Fatality Facts" article the Plaintiff intends to offer as an exhibit at trial. The article uses various tables, statistics, and statements to attempt to prove one point in support of the Institute's agenda: that tractor-trailers are far more dangerous to the motoring public than are passenger cars. Even if the statistics upon

which the article relies can be proven to be reliable, the article includes the Institute's conclusions and opinions from the statistics and thereby renders them subjective. Even without such editorializing, "Statistics without an analytic foundation are virtually meaningless." Evans v. McClain, Inc., 131 F.3d 957, 963 (11th Cir. 1997) (quoting Brown v. American Honda Motor Co., 939 F.2d 946, 952-53 (11th Cir. 1991)).

The article is indisputably hearsay, as it contains numerous out-of-court statements "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. As a general rule, hearsay is not admissible unless it falls within one of the very specific and limited exceptions to the hearsay rule. Fed. R. Evid. 802. The Plaintiff might argue that the article falls within the business record exception. Rule 803(6) of the Rules of Evidence provides that a "memorandum, report, record, or data compilation" that is "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make" may be admitted into evidence, although hearsay, "unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Like the Liberty Mutual survey addressed in Objection 3, the Plaintiff has made no showing that the methodology of the statistics contained in the article is scientific or otherwise reliable. Furthermore, as noted above, the Institute has an agenda that it is seeking to accomplish, the article is nothing more than one tool the Institute has used in furtherance of its agenda. There is nothing trustworthy about the article, and therefore it cannot be considered a reliable business record. As such, it must be excluded as hearsay.

The Institute is not a public office or agency. Therefore, the public records exception to the hearsay rule is inapplicable. However, even if the article was a public record, it still would have to survive a "trustworthiness" test. Fed. R. Evid. 803(8). In this context, public records have been deemed inadmissible where they include "statements of opinions by persons who may or may not qualify as experts, testimony by individuals not subject to cross examination,

hearsay, and conclusions based upon statistics which appear to the court to have very limited probative value on the issues to be decided." Fowler v. Firestone Tire & Rubber Co., 92 F.R.D. 1, 2 (N.D. Miss. 1980) (excluding reports prepared by National Highway Traffic Safety Administration and Moss Committee regarding safety of Firestone tires that were subject of product liability suit).

The article also is irrelevant to the issues before the Court. There is only one accident at issue in this case – a collision between a Benton Express tractor-trailer and Ronald Roby's car on April 11, 2005. The thousands of accidents that form the basis of the article have no bearing on the issues set for trial, i.e., whether Benton Express is liable for the accident and therefore for Ronald Roby's death. Whether or not tractor-trailers in general have killed thousands of other people has no probative value in the instant case. Each case must be decided on its own merits, and Defendant cannot be judged based on the number of people killed by "large trucks" dating back to 1975. Even if the article had some probative value, this probative value would be overwhelmingly outweighed by the unfair prejudice that would be caused Defendant by the jury being informed of the inflammatory statistics in the article. Furthermore, the article would mislead the jury into believing that the entire trucking industry is on trial and would thereby confuse the issues. Accordingly, even if not hearsay, the article must be excluded are irrelevant or, alternatively, under Rule 403.

Finally, the article represents an attempt to inject the issue of automobile insurance into the trial. Therefore, it should be excluded under Rule 411.

**13. Plaintiff's Exhibit No. 506**: The Plaintiff intends to offer as an exhibit the "Alabama DOT File regarding repairs to guardrail." The Alabama DOT has requested that Defendant pay it for the damage to the roadway structures caused by the accident. Ostensibly, the Plaintiff wishes to introduce evidence of this claim by the DOT to show that Defendant is liable for the subject accident. For the same reasons stated in Objection 11, such evidence must be

excluded.

    **14.** **Plaintiff's Exhibits Nos. 507 through 508 and 520**: The Plaintiff intends to offer as exhibits the "Workers Compensation Mediation Settlement Agreement," "Printout of Worker's Comp payments to Stephanie Stephens," and "Worker's Compensation File for Craig Anthony Stephens." Craig Stephens was killed in the subject accident. His widow, Stephanie Stephens, made a claim against Benton Express for death benefits under the Florida Workers' Compensation Act. It is undisputed that weekly benefits were paid to Ms. Stephens for a period of time after she made the claim. It is also undisputed that the weekly benefits were stopped when Benton Express' workers' compensation insurance carrier denied the claim within the 120 day period allowed by Florida law. Finally, it is undisputed that the claim was settled for a lump-sum amount a few months ago. Although the case was litigated in the Florida administrative system, it did not go to trial.

    The only purpose the Plaintiff has ever given for offering the workers' compensation evidence is to attempt to use the payment of workers' compensation benefits in Stephanie Stephens' case as an admission of liability in the instant case. This is an improper purpose, and the evidence must be excluded from trial.

    Though Benton Express paid Stephanie Stephens weekly benefits for a period of time, it did so only because it was required to under Florida law. Such payments do not even amount to an admission of liability in the workers' compensation case. Where there is any question as to compensability in a workers' compensation case, Florida law dictates that the employer must begin an investigation and must begin paying benefits. Specifically, the law provides:

> If the carrier is uncertain of its obligation to provide all benefits or compensation, the carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits.... **Additionally, the carrier shall initiate payment and continue the provision of benefits and compensation as if the claim**

16

**had been accepted as compensable, without prejudice and without admitting liability.**

Fla. Stat. ch. 440.20(4) (2003).  Thus, the weekly payments to Stephanie Stephens were made pursuant to statute and "without prejudice and without admitting liability."

Within the 120 day investigation period required by Florida law, Benton Express denied Ms. Stephens' claim and stopped the benefits. [See Notice of Denial, a copy of which is attached hereto as Exhibit 6 for the Court's reference].  Specifically, the Notice of Denial states, in relevant part, as follows as "reason for denial of benefits":

> 1.  Pursuant to 440.20(4), Fla. Stat., the employer/carrier files a denial of claim within the 120-day time period set out in the above-mentioned statute.
>
> 2.  After a thorough investigation of this claim, the employer/carrier has determined that claimant was not performing work in the course and cope of his employment at the time of the accident which resulted in his death.
>
> 3.  The claimant abandoned his employment with the employer/carrier.
>
> 4.  The claimant took a distinct and substantial deviation from his employment.
>
> ...
>
> 6.  The claimant also participated in misconduct which constituted a wilful or wanton disregard of the employer's interest.

[Id.].  These reasons for denial of workers' compensation claims are all entirely consistent with the reasons Defendant has denied liability in the instant case.

The payment of weekly benefits to Stephanie Stephens during the 120 day investigation period mandated by Florida law has absolutely no probative value in the instant case.  In paying the benefits, Benton Express was doing nothing more than complying with Florida law, and all payments were made "without prejudice and without admitting liability" as a matter of Florida law.  When the 120 day period expired, Benton Express denied the claim for the exact reasons

that Benton Express has denied liability in the instant case.  As such, evidence of the payment of the weekly benefits has no tendency to make any fact at issue in this case more or less probable, and therefore evidence of the payments is irrelevant and inadmissible.  Even if the payments had some probative value, it would be substantially outweighed by the unfair prejudice that would be caused Defendant by the evidence.  Furthermore, the evidence would mislead the jury and confuse the issues by causing Defendant to have to attempt to explain the nuances of the requirements of Florida workers' compensation law to the jury.

Besides the weekly payments, the Plaintiff also is seeking to have admitted evidence of the settlement of Stephanie Stephens' workers' compensation claim.  Evidence of the settlement is plainly inadmissible as a "compromise" or "offer of compromise" under Rule 408, which provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed. R. Evid. 408.  The reason for this exclusionary rule is the "promotion of the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408, Notes of Advisory Committee.  The rule excludes both offers of compromise and completed compromises, recognizing that the situation of completed compromises (such as in the instant case) "will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person." Id.  Therefore, under Rule 408, evidence of Stephanie Stephens' settlement must be excluded from trial.

Even if the workers' compensation settlement was not excluded under Rule 408, it must be excluded under either as irrelevant or under Rule 403.  There are countless reasons why a party may choose to settle a lawsuit, most of which have little or nothing to do with the merits of

the claims.  As recognized by the Advisory Committee, "the evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408, Notes of Advisory Committee.  Even if the evidence was relevant, it has very little probative value, and it is likely to confuse the issues and mislead the jury into believing that a settlement in one case (despite the significant differences in law, jurisdiction, and monetary exposure) necessarily means liability in another.  The unfair prejudice this would cause Defendant drastically outweighs any probative value the evidence might have, and evidence of the settlement must be excluded as irrelevant or under 403.

**15.  <u>Plaintiff's Exhibits Nos. 511 through 512</u>**: The Plaintiff intends to offer as exhibits the "CV" and "Rule 26 Expert Submissions" of her purported accident reconstruction expert, M.P. Stirling, and her purported trucking industry expert, Roland Brown.  The Rule 26 reports of each of these witnesses were prepared by the Plaintiff's counsel and not by the witnesses.  The reports also were not signed by the witnesses.  Nonetheless, the reports contain the "expert" opinions of Ms. Stirling and Mr. Brown in this case.

The reports are hearsay in that it they are out-of-court statements offered to prove the truth of the matter asserted therein. Fed. R. Evid. 801.  They do not fall within any of the delineated exceptions of Rules 803 or 804 and therefore must be excluded. Fed. R. Evid. 802.

Ms. Stirling's report contains an opinion that Craig Stephens "was operating his vehicle in excess of 59 miles per hour as he went over the barrier gurad [sic] on the I85/I65 interchange."  In her deposition, Stirling recanted this opinion.  She testified that it is scientifically impossible for her to calculate Stephens' speed when he went over the barricade and that she has no independent knowledge of his speed.  Accordingly, this opinion fails to comply with the requirements of Rules 702, 703, and 705 and must be excluded.

Beyond being hearsay, many of the opinions stated in Roland Brown's report are irrelevant to the issues set for trial or are otherwise unnecessary and are due to be excluded.

19

These include the following:

Opinion 1: Brown opines that the federal DOT regulations for trucking industry apply to Defendant. Defendant does not dispute this and is willing to stipulate to it. Accordingly, the opinion is unnecessary.

Opinion 2: Brown opines that Craig Stephens had various logbook problems during his employment with Benton Express including so-called "pattern logging" wherein Stephens logged the exact same time for each trip that he made. Any such problems are irrelevant to this case. The Plaintiff has not stated any claim for negligent supervision or anything similar, apart from the claim that Defendant did not enforce its communications policy.

Opinion 3: Brown opines that, during his employment with Benton Express, Craig Stephens logged an average speed that should have caused Defendant concern. Again, the Plaintiff has not stated a claim for negligent supervision, and this evidence is irrelevant.

Opinion 4: Brown opines that a publication by J.J. Keller states, "Carriers are liable for the actions of their employees" for hours of service violations. This statement is inadmissible hearsay. It is also irrelevant. There is no claim for negligent supervision or entrustment, and any hours of service issues are irrelevant.

Mr. Brown's report also states opinions regarding tracking of trucks and Defendant's alleged failure to enforce its communication policy. These opinions are due to be excluded as irrelevant if the Court grants Defendant's motion for summary judgment as to count three of the Plaintiff's complaint.

Even if relevant, the opinions in Mr. Brown's report are not "based upon sufficient facts or data," are not the "product of reliable principles and methods," and are not the result of Brown applying "principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The facts or data upon which Brown bases his opinions also are not "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Specifically, Brown has stated many

things that Defendant "should" have done differently even though there is no statute, regulation (including the DOT regulations which, in Brown's opinion, specifically govern the trucking industry) or case law that places legal duties on Defendant to do so.

One opinion is that Defendant could ("could" in the report, changed to "should" in Brown's deposition) have equipped its trucks with tracking devices. This opinion is based on one vague statement on Defendant's website regarding technology and the Liberty Mutual survey (Objection 3) indicating that "almost half" of Liberty Mutual's customers who responded to a survey "have GPS." Even Brown admitted in his deposition that GPS is not an industry standard but is "getting there." These are the limits of the data to support any opinion that Defendant should have tracked its trucks, and it is clear that there is insufficient data to support the opinion and moreover that the opinion is the product of unreliable methods applied unreliably. Furthermore, the Plaintiff has made no showing that experts in the trucking industry reasonably rely on out-of-context statements from the internet and insurance company surveys to determine trucking industry standards.

Another opinion is that Defendant did not enforce a policy stating "drivers are expected to maintain regular communications with the company while in transit." The undisputed evidence in this case is that Defendant's road drivers were required to "call in" only when an unusual situation arose, such as an accident or maintenance problem. The Plaintiff has attempted to state that, because Craig Stephens did not "call in" during his trip from Pensacola to Atlanta on April 8, 2005, he should have been terminated when he reached Atlanta. There is absolutely no basis for this opinion other than the conclusory statements of Roland Brown. If Defendant had enforced this policy in such a way, it would have been the first time. Brown's arbitrary interpretation of the term "regular communications" flies in the face of long-established company protocol, and he has offered nothing to support his interpretation. This opinion is based on insufficient facts, and is not the product of reliable methodology or on any reliable

application of such methodology.  Finally, conclusory and arbitrary interpretations of phrases contained in trucking company documents are not the things upon which bona fide trucking experts reasonably rely.

Another opinion is that "a good, safe, prudent trucking company would have scheduled times for departure and arrival at any point...Benton should have had a policy and procedure in place for scheduled times."  Brown has offered absolutely no basis for this opinion. Furthermore, the undisputed evidence shows that Defendant does have a policy for arrival times inasmuch as it requires its drivers to proceed directly from point A to point B via the fastest route.

Another opinion is that Defendant should have had a plan in place as to what to do in the event that a driver goes AWOL, which would have included Defendant calling the Atlanta Police Department first instead of first calling the Florida Highway Patrol.  Again Brown offers nothing in support of this opinion other than his own conclusory statements.

Another opinion is that Benton Express has admitted liability because it paid workers' compensation benefits to Stephanie Stephens.  Brown certainly is not an expert on workers' compensation law or on the effect of workers' compensation payments and/or settlements on pending liability claims.  Even if he was, such evidence is due to be excluded, as demonstrated in Objection 14.

Brown's report is due to be excluded as inadmissible hearsay.  Even if the report itself is not hearsay, every one of the opinions stated in the report are due to be excluded as irrelevant and/or because they fail to meet the requirements of expert opinions set forth in Rules 702, 703, and 705.

**16.  Plaintiff's Exhibit No. 513 and 524**: The Plaintiff intends to offer as an exhibit "Safer Web."  This description of the exhibit is so vague that it is impossible for Defendant to know exactly what the exhibit is.  Therefore, Defendant reserves any additional objections in

case it is something other than what Defendant assumes, which is a printout from the "Safety and Fitness Electronic Records System" regarding Defendant. The Plaintiff also intends to offer as an exhibit the "MCMIS Company Safety Profile for Benton Express, Inc.," which is another internet printout. Defendant objects to such a printout on the grounds that it is inadmissible hearsay. Defendant further objects based on the inherent unreliability of such an internet printout. See St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F.Supp. 2d 773, 775 (S.D. Tex. 1999) (excluding printouts from a US Coast Guard online database because "any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules") (quoted with approval in United States v. Jackson, 208 F.3d 633, 637 (7th Cir. 2000)).

Furthermore, these documents contain information about Defendant's safety track record, which is based on the company's history of accidents and DOT violations. Such compilations of the company's safety history is inadmissible character evidence under Rule 404(b). It also is irrelevant since it involves incidents other than the one at issue here, there is no claim that Benton Express is an unsafe company, and there is no claim that Benton Express violated any DOT regulations. Because it is irrelevant, the evidence must be excluded. Fed. R. Evid. 402.

Even if relevant, the company's safety profile has very little probative value. Even if Benton Express was an unsafe company (which it is not), it would not mean that Benton Express is at fault for the subject accident. With such little probative value, the evidence must be excluded under Rule 403.

Finally, the documents contain statistics and conclusions from those statistics. The Plaintiff has offered nothing to prove the reliability of any methodology used to generate these statistics and therefore, as explained elsewhere in these objections, the documents must be excluded due to their untrustworthiness.

17. **Plaintiff's Exhibits Nos. 518 through 519**: The Plaintiff intends to offer as exhibits recordings of "9-1-1 calls" made to the Montgomery County Sheriff's Department and the Montgomery Police Department. These recordings include calls from motorists complaining of a tractor-trailer's erratic driving several miles prior to the accident as well as calls from motorists notifying the authorities that an accident had just occurred. As demonstrated in Objection 1 regarding the statement of Johnny Pollard, any evidence as to Craig Stephens' driving prior to the immediate events of the accident is irrelevant and must be excluded from trial. As for the other calls, there is no dispute that the accident occurred or that the authorities were notified of it. Accordingly, the calls are not probative of any disputed issue and will serve only to prolong the trial and confuse the issues. Accordingly, all of the calls are due to be excluded as irrelevant or under Rule 403.

18. **Plaintiff's Exhibit No. 560**: The Plaintiff intends to offer as an exhibit the "personnel file" from the Alabama Department of Public Safety of Defendant's accident reconstruction expert, Steve A. "Tony" Stephens. This Court has already held (Doc. No. 98) that Stephens' personnel file from his employment as an Alabama State Trooper is confidential and not even discoverable, must less admissible. Furthermore, the only reason the Plaintiff wishes to admit the file is because the Plaintiff believes it will include documentary evidence of Stephens' brief suspension from the State Troopers for violation of a code of conduct policy. Such a suspension has no bearing on Stephens' qualifications and expertise as an accident reconstruction expert and therefore is irrelevant. The suspension also does not fit within any Rule of Evidence to be used as character evidence, whether for impeachment or otherwise. Accordingly, the evidence is due to be excluded.

19. **Plaintiff's Exhibit No. 571**: The Plaintiff intends to offer as an exhibit "Benton Express, Inc.'s web page advertisement." The Plaintiff does not specify which part(s) of Defendant's website she intends to offer, nor does she indicate what purpose the evidence

would serve.  Ostensibly, she intends to use an excerpt of the website to attempt to prove that Benton Express has advertised to its customers that it tracks its trucks.  To that end, the only portion of the website that is even remotely relevant is the statement that "we push to provide the most current technological advancements and use the most modern and well-maintained fleet of equipment." <http://www.bentonexpress.com/aboutus/aboutus.htm>.

As demonstrated in Objection16, information from the internet is inherently unreliable and is "adequate for almost nothing."  Even so, the evidence must be excluded as irrelevant.  A company's vague advertisements are not sufficient to create a duty even to the company's customers.  Even if they were, there is no evidence that Ronald Roby has ever been a customer of Defendant's or has ever relied on any representations on Defendant's website. Even if the Plaintiff could prove that Defendant's statement that "we push to provide the most current technological advancements" means that Defendant promised its customers it would provide GPS tracking, and even if the Plaintiff could prove that Defendant thereby had a contract with its customers to provide GPS tracking, the Plaintiff has not made a claim that her decedent was a third-party beneficiary of such a hypothetical contract.  Defendant's vague representations on its website simply have no probative value on any issue set for trial, and therefore should be excluded as irrelevant.

If the website information were admitted, it would cause confuse the jury and require a significant portion of the two-day trial to be spent showing the jury that the representations did not create a duty and that, even if they did, the duty did not extend to Ronald Roby. Accordingly, even if relevant, the evidence should be excluded under Rule 403.

**20.  Plaintiff's Exhibits Nos. 575 through 576**: The Plaintiff intends to offer as exhibits letters between Plaintiff's counsel and Defendant's counsel dated September 8 and September 9, 2005.  These letters are out-of-court statements offered to prove the truth of the matters asserted therein and are therefore inadmissible hearsay.

21. **Plaintiff's Exhibit No. 578**: The Plaintiff intends to offer as exhibits "news articles." Ostensibly, these are news articles regarding the subject accident that are being offered to prove the truth of the matters therein, i.e., the who, what, where, and when of the accident.  As such, the articles are hearsay, and they do not fall within any exception to the hearsay rule. Fed. R. Evid. 801, 802, 803; <u>see</u> <u>also</u> <u>United States v. Baskes</u>, 433 F. Supp. 799, 801 (N.D. Ill. 1977) (holding that copies of newspaper and magazine articles "are clearly inadmissible"); <u>Hallman v. Reynolds Metals Co.</u>, 2000 U.S. Dist. LEXIS 8610, *31, n.4 (N.D. Ala. 2000) (stating "newspaper articles are indisputably hearsay").  Thus, any news articles must be excluded from trial.

22. **Plaintiff's Exhibit No. 579**: The Plaintiff intends to offer as an exhibit a "CD (Accident Sequence)."  Many CDs have been exchanged in the discovery phase of this matter, and Defendant is unaware of any that could accurately be described an "accident sequence." For that reason, Defendant is unsure of the exact nature of this exhibit and must reserve all objections until it obtains a copy of the exhibit from the Plaintiff.

Notwithstanding this problem, Defendant suspects that the CD may contain an animated simulation of the events of the subject accident.   If Defendant's suspicions are correct, then Defendant objects to the exhibit.  No such CD has been produced in discovery, and therefore Defendant has not been afforded the opportunity to depose whoever created the animation. Also, an animated simulation would require expert testimony to support it, and the Plaintiff has never disclosed such an expert and therefore is barred from using one at trial.  Defendant objects to such demonstrative evidence to the extent that it is inconsistent with the actual evidence of the events of the accident.  Defendant further objects that such demonstrative evidence is unnecessary because there is very little disagreement between the parties as to the events of the subject accident.  As such, the evidence would have very little probative value and would serve only to confuse the issues, mislead the jury, and cause prejudice to Defendant.

23. **Plaintiff's Exhibit No. 580**: The Plaintiff intends to offer as exhibits diagrams of the accident scene. Defendant has not yet seen these diagrams. However, Defendant objects to them to the extent that they are inconsistent with the actual evidence of the events of the accident.

24. **Plaintiff's "Catch-All" Exhibits**: In addition to all of the specific exhibits listed by the Plaintiff, she has also included several "catch-all" categories of exhibits. These are "any exhibit listed by any other party; any exhibit necessary for cross examination; any exhibit necessary for rebuttal or impeachment; and any exhibit attached to a deposition of any witness deposed in this case." Defendant objects to these exhibits on the grounds that they are so overly broad and vague as to preclude Defendant from making specific objections. Nonetheless, Defendant objects to each exhibit to the extent that it is irrelevant, immaterial, unduly prejudicial, hearsay, or otherwise inadmissible.

Respectfully submitted,


 s/ Gregory A. Brockwell
BRETT A. ROSS (ASB-6771-O76B)
GREGORY A. BROCKWELL (ASB-9949-R49B)

Attorneys for Defendant Benton Express, Inc.

**OF COUNSEL:**

CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35216
(205) 822-2006
(205) 822-4058 (Direct Facsimile)
E-mail:        bar@carrallison.com
               gab@carrallison.com

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following on this the 3rd day of March, 2006:

Jere L. Beasley
Labarron N. Boone
Julia A. Beasley
BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

                    s/ Gregory A. Brockwell
                    Of Counsel