IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO.: 2:05CV494-MHT |
| | )<br>) |
| BENTON EXPRESS, INC., et al, | )<br>) |
| Defendants. | ) |

**DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERTS**

COMES NOW the Defendant, Benton Express, Inc., and moves the Court to exclude certain testimony of the Plaintiff's experts. In support thereof, Defendant states as follows:

**I.  INTRODUCTION**

The Plaintiff has retained two experts to testify at the trial of this action. The first, M.P. Stirling, is proffered as an accident reconstruction expert to offer opinions regarding the events of the subject accident. The second, Roland Brown, is proffered as a trucking industry expert to offer opinions regarding Defendant's duties and actions as a motor carrier. Both of these purported experts offer opinions that do not meet the requirements for admissibility of expert testimony and therefore must be excluded from trial.

**II.  LEGAL AUTHORITIES**

Rule 702 of the Federal Rules of Evidence, as explained by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny, provides this Court with guidance in determining whether to admit expert testimony. Of course, as with all forms of evidence, expert testimony must be relevant to be admissible. According to the

Supreme Court, "Expert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful," and the testimony must be "not only relevant, but reliable." Daubert, 509 U.S. at 589, 591. Thus, even if relevant, such testimony still is subject to numerous limitations. First, expert testimony is only admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Second, the witness offering the testimony must be "qualified as an expert." Id. If so qualified, the witness may then offer expert testimony only if three conditions are met: "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. The basis of the expert's opinion must also be "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703.

The Eleventh Circuit Court of Appeals has explained these requirements for admission of expert testimony as follows:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1338 (11th Cir. 2003) (quoting City of Tuscaloosa v. Hacros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

The Daubert Court held that Federal Rule of Evidence 702 imposes upon trial courts the duty to ensure that any scientific testimony offered under the Rule is "not only relevant, but reliable." 509 U.S. at 589. In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified that trial courts must undertake this Daubert analysis in all cases, regardless of whether the expert testimony offered is scientific, technical, or based on

specialized knowledge.  The Kumho Court stated that the trial court's "gate-keeping" function is meant

> to ensure the reliability and relevance of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

Kumho, 526 U.S. at 152.  This gate-keeping function "requires more than simply taking the expert's word for it." Fed. R. Evid. 702, Advisory Committee Notes (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995)).  The trial court

> in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.  The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.

Id.  Moreover, the "more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." Id. (citing O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994)).  The testimony must be "more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 590.

     Daubert set forth a checklist for trial courts to use in assessing the reliability of expert testimony.  The Daubert factors are: (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has ever been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; and (4) whether the technique or theory has been generally accepted in the scientific community.  Daubert, 509 U.S. at 593-94.  Though the instant case involves scientific as well as non-scientific testimony, "An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a

scientist." Fed. R. Evid. 702, Advisory Committee Notes (citing Watkins v. Telsmith, Inc., 121 F.3d 984, 991 (5th Cir. 1997)). Nothing requires a trial court to admit "opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

### III.  ARGUMENT

**A.    ALL OF THE OPINIONS OF M.P. STIRLING ARE DUE TO BE EXCLUDED FROM TRIAL.**

    **1.    Stirling's opinions on calculation of Craig Stephens' speed.**

M.P. Stirling's Rule 26 disclosure contains an opinion that Craig Stephens "was operating his vehicle in excess of 59 miles per hour as he went over the barrier gurad [sic] on the I85/I65 interchange." In her deposition, Stirling admitted that there is no scientific or otherwise objective basis for this opinion. She stated that the figure of "59 miles per hour" came from the "critical speed" she calculated for the curved ramp from I-85 South to I-65 South. [Deposition of M.P. Stirling, p. 137:22 - 138:22, excerpts of which are attached hereto as Exhibit 1]. Regarding this calculation, she testified as follows:

> Q.    So part of the basis of the 59 miles per hour was the critical speed you determined for that curve; right?
>
> A.    Yeah.
>
> Q.    And I think we've already determined earlier that the critical speed for that curve is irrelevant to this case; is that right?
>
> A.    Yes.
>
> Q.    And you have -- I think you also testified that it's impossible to make a calculation as to Mr. Stephens' speed for just going straight over the barrier; is that correct?
>
> A.    Yes.

[Exhibit 1, p. 138:19 - 139:8]. Based on Stirling's testimony, there is no mathematical basis for her opinion that Stephens was "operating his vehicle in excess of 59 miles per hour" as he went over the barrier. Accordingly, the opinion fails to meet the stringent requirements for admission of expert testimony and must be excluded.

> 2. **<u>Stirling's opinions based on "witness statements" that have been withheld from production by Plaintiff's counsel</u>.**

M.P. Stirling has based several of her opinions on "witness statements" that are clearly discoverable but that have been withheld from discovery by the Plaintiff's counsel without justification. For instance, regarding Stephens' speed after removing the irrelevant issue of "critical speed" calculations, Stirling testified:

> Q. And so removing the critical speed for the curve from the equation, what is the in excess of 59 miles per hour based on?
>
> A. The witnesses.
>
> Q. And are those the witness statements or witness depositions that you read here in Mr. Boone's office but do not have a copy of?
>
> A. Yes.

[Exhibit 1, p. 139:9-17]. She also testified that all of her other accident reconstruction opinions are based, at least in part, on the "witness statements." [Exhibit 1, p. 113:18 - 114:13].

According to Stirling, the "witness statements" she bases the opinion on are several "witness depositions"[1] that she reviewed at the Plaintiff's counsel's office when she began her work in this case. [Exhibit 1, p. 69:8 - 71:20; 73:7-17; 95:13 - 97:8; 113:18 -114:17]. These included statements from Bridgette Harris, Andrew Davis, Corporal Green (the police officer

---

[1] Although "deposition" is the term that Ms. Stirling has used to describe the documents, Plaintiff's counsel denies that they are depositions. Plaintiff's counsel has stated that the documents are typed summaries of witness interviews (or something similar). Without the benefit of knowing exactly what they are, Defendant's counsel has chosen to use the term "witness statement" to describe the documents in this motion.

5

who investigated the subject accident), LaDon Dansby, Richard Patterson, Stephen Hornsby, Michael Boozer, Jermale Ayers, Julie Pollard, Johnny Pollard, and Lisa Warr. [Exhibit 1, p. 139:19 - 142:6].

These witness statements fall within the scope of Defendant's request for production of documents that accompanied the notice of deposition of Stirling. [Notice of Deposition, a copy of which is attached hereto as Exhibit 2]. The Plaintiff never objected to this request for production, and the statements should have been produced at the deposition along with the rest of the documents that Stirling had considered in forming her opinions. Defendant's counsel also requested production of these witness statements during Stirling's deposition, asserting that Defendant is entitled to discover all materials that the Plaintiff's experts have considered in forming their opinions. [Exhibit 1, p. 70:15 - 71:20; 96:17 - 97:8].

The day following Stirling's deposition, Defendant's counsel sent a letter to Plaintiff's counsel following up on the request for production of the witness statements. [See Letter of December 14, 2005, attached hereto as Exhibit 3]. Because the Plaintiff's counsel did not respond to this letter, Defendant filed a motion to compel production of the witness statements (Doc. No. 53) which was denied on procedural grounds (Doc. No. 59). Because Defendant has been barred from filing any additional discovery motions (Doc. No. 98), Defendant has no recourse to obtain the witness statements that form the basis of Stirling's opinions.

Defendant has continued to attempt to obtain the witness statements from the Plaintiff's counsel. [Correspondence, copies of which are attached hereto as Exhibit 4]. The Plaintiff's counsel has promised to produce the statements. [Exhibit 4]. Despite these promises, the Plaintiff's counsel has never produced the statements. It is clear that the Plaintiff has used this tactic to attempt to prejudice Defendant, and this ploy will succeed only if the Court permits Stirling to offer opinions based on the witness statements.

Defendant clearly is entitled to discover all documents considered by Stirling in forming her opinions. The disclosure of an expert's opinions shall include "the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. Pro. Rule 26(a)(2)(B). The Comment to the 1993 Amendments to Rule 26 provides:

> Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. Pro. A party waives all privileges that may otherwise protect materials from discovery when those materials are furnished to the party's expert. See American Fidelity Assurance Co. v. Boyer, 225 F.R.D. 520 (D.S.C. 2004); Baum v. Village of Chittenango, 218 F.R.D. 36 (N.D.N.Y. 2003).

By failing to produce the witness statements, the Plaintiff has denied Defendant the right to test or otherwise challenge those opinions of Stirling that are based on the statements. Defendant also has been denied the opportunity to depose these witnesses to determine the full scope of their knowledge, including whether their knowledge differs from the information allegedly contained in the secret witness statements. Stirling's opinions based on the witness statements should be excluded as a sanction for the Plaintiff's refusal to produce those statements. Furthermore, because Defendant cannot challenge the substance of Stirling's opinions based on the witness statements, said opinions must fail any Daubert analysis. Finally, unproduced, and therefore untested, witness statements are not a type of evidence reasonably relied upon by accident reconstruction experts, and therefore the opinions have an insufficient basis and must be excluded under Rules 702 and 703.

### 3.  The remainder of Stirling's accident reconstruction opinions.

Stirling bases her opinions on photographs of the accident scene, the witness statements discussed above, and the "police report." [Exhibit 1, p. 114:2-17]. The "police report" to which she refers is the Uniform Traffic Accident Report prepared by the Montgomery Police Department, which is an inadmissible document (Doc. No. 109, Objection 1). She has not even seen the full report of the "Fatal Traffic Collision Investigation," nor was she even aware that it exists, though it is something that would be important for her to have. [Exhibit 1, p. 68:13 - 69: 3; 130:3 - 131:22]. In other cases, it has been important for Stirling to review all of the evidence available to the investigating police officers. [Exhibit 1, p. 131:23 - 132:13]. Despite this, it is undisputed that Stirling did not review this evidence in forming her opinions, including the witness statements and photographs taken by the police as part of their traffic homicide investigation. [Exhibit 1, p. 134:16 - 135:6].

During her tenure as an Alabama State Trooper, Stirling conducted numerous traffic homicide investigations. She testified that personally interviewing the eyewitnesses and personally inspecting the vehicles were important parts of such an investigation. [Exhibit 1, p. 136:1 - 137:3]. Despite this, she has not interviewed the witnesses or inspected the vehicles in this case. [Exhibit 1: p. 137:4-15]. Though Stirling visited the accident scene several months after the accident occurred, there was no meaningful evidence of the accident remaining there for her to examine. [Exhibit 1, p. 18:5-21]. Though she claims to have reviewed photographs of the scene and the vehicles, it is undisputed that these were not the official police photographs since she never was provided with the traffic homicide file that included such photographs.

In short, Stirling has followed none of the methodology in this case that she testified it was important for her to follow in other cases. It is apparent that she has done little more than read the secret witness statements and adopt the opinions of the Montgomery Police Department from the Uniform Traffic Accident Report. In essence, she is a professional parrot.

Stirling has based her opinions on improper evidence and has failed to follow the methodology that she testified she has used both as a State Trooper and in her expert work in other cases. As a result, her accident reconstruction opinions are due to be excluded under <u>Daubert</u> and its progeny and Rules 702 and 703.

4. **<u>Stirling's opinions that are not within the field of accident reconstruction</u>**.

Stirling has attempted to offer some opinions that go beyond mere accident reconstruction. However, in her deposition, she admitted that she is not an expert in any field other than accident reconstruction. She testified:

> Q. I really don't care what your interpretation of Benton Express company policy is unless you're an expert in that field. Are you?
>
> A. No.
>
> Q. And I really don't care what your opinions are about what Craig Stephens was doing for forty-eight hours that he was missing because you're not an expert in that area, are you?
>
> A. No.
>
> Q. You're an expert--or at least you're being offered as an expert in accident reconstruction, aren't you?
>
> A. Yes.
>
> Q. And does Benton Express company policy have anything to do with your [expert] opinions here today?
>
> ...
>
> A. No.
>
> ...
>
> Q. What is significant to your expert opinions in this case?
>
> A. I think it's significant that Mr. Stephens ran into the bridge abutment, went off the bridge, and landed on I-65 south and slid into Mr. Roby's car, and, as a result Mr. Roby and Mr. Stephens are dead.

9

>    ...
>
>    Q.    And I just want to clear things up here, if we can. That you are being offered as an expert in accident reconstruction; is that right?
>
>    A.    Yes.
>
>    Q.    And you have reached opinions as an expert on how the accident that is the subject of this case occurred; is that correct?
>
>    A.    Yes.

[Exhibit 1, p. 112:5 - 113:5; 113:18 - 114:1; 114:18 - 115:3].

A purported expert may only offer testimony in an area if he or she is "qualified as an expert" in that area. Fed. R. Evid. 702. In her deposition, Stirling admitted that her only claimed area of expertise is the field of accident reconstruction. Accordingly, she cannot offer any testimony that falls outside the field of accident reconstruction, and any such opinions must be excluded from trial.

**B.    ALL OF THE OPINIONS OF ROLAND BROWN ARE DUE TO BE EXCLUDED FROM TRIAL.**

    **1.    <u>Brown's irrelevant opinions</u>.**

To be admissible, expert testimony must be both relevant and reliable. Many of Roland Brown's opinions are irrelevant to the issues set for trial or are otherwise unnecessary and are due to be excluded. [<u>See</u> Rule 26 Report of Roland Brown, attached hereto as Exhibit 5, for the full text of these opinions]. These include the following:

Opinion 1: Brown opines that the federal DOT regulations for trucking industry apply to Defendant. Defendant does not dispute this and is willing to stipulate to it. Accordingly, the opinion is unnecessary and will not assist the jury with any disputed issue.

Opinion 2: Brown opines that Craig Stephens had various logbook problems during his employment with Benton Express including so-called "pattern logging" wherein Stephens logged the exact same time for each trip that he made. Any such problems are irrelevant to this

case. The Plaintiff has not stated any claim for negligent supervision or anything similar, apart from the claim that Defendant did not enforce its communications policy.

Opinion 3: Brown opines that, during his employment with Benton Express, Craig Stephens logged an average speed that should have caused Defendant concern. Again, the Plaintiff has not stated a claim for negligent supervision, and this evidence is irrelevant.

Opinion 4: Brown opines that a publication by J.J. Keller states, "Carriers are liable for the actions of their employees" for hours of service violations. This statement is inadmissible hearsay. It is also irrelevant. There is no claim for negligent supervision or entrustment, and any hours of service issues are irrelevant.

As noted in Daubert, expert testimony must be both relevant and reliable. Because they are irrelevant, all of the opinions listed above are due to be excluded from trial.

2.     **Brown's opinions of Defendant's legal duty based on the Liberty Mutual Survey and Defendant's website.**

Roland Brown has stated opinions that Defendant had a legal duty to track its trucks. These opinions would only be relevant if the Court denies Defendant's motion for summary judgment as to count three of the Plaintiff's complaint. These opinions of legal duty are based solely on a survey by Liberty Mutual Insurance (See Doc. No. 111, Objection 3) and a statement on Defendant's website. These opinions are unreliable and must be excluded.

The opinions are not "based upon sufficient facts or data," are not the "product of reliable principles and methods," and are not the result of Brown applying "principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Furthermore, the facts or data upon which Brown bases his opinions also are not "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Specifically, Brown has stated many things that Defendant "should" have done differently even though there is no statute, regulation (including the DOT regulations which, in Brown's opinion, specifically govern the trucking industry) or case

law that places legal duties on Defendant to track its trucks.

Brown's opinions are far from clear. In fact, they changed throughout the course of his deposition. Nonetheless, to give Brown the benefit of the doubt for purposes of this motion, we will assume that Brown's specific opinions are that (1) based on a statement on its website, Benton should have used GPS tracking of its trucks; and (2) based on a Liberty Mutual survey, use of GPS is an accepted method of tracking trucks in the trucking industry.

It is undisputed that the only evidence Brown can offer in support of his opinion that GPS tracking is an industry standard is the Liberty Mutual survey. He testified in his deposition:

> Q. Are there any books or articles or other written materials we could find that you're aware of that say essentially the same thing that you've opined about the need for GPS as a safety device in trucks?
>
> A. Not that I can think of right off.
>
> ...
>
> Q. But other than this article from Liberty Mutual, can you identify for me as we sit here today any other articles or other publications?
>
> A. No. Not as we sit here today, I can't. No, sir.

[Deposition of Roland Brown, p. 213:1-8; 217:19 - 218:1, excerpts of which are attached hereto as Exhibit 6]. This is despite Brown's testimony that he reads on a regular basis <u>Transport Topics</u>, J.J. Keller internet update, Alabama Trucking Association bulletins, newsletters of several different trucking associations, a couple of light and medium truck magazines, and some other publications. [Exhibit 6, p. 174:21 - 178:12].

Brown has not submitted any of his opinions for peer review. [Exhibit 6, p. 213:9-22]. In fact, Brown readily admits that, despite his claim that he is an expert, "it's not a practice of mine" to seek peer review. [<u>Id.</u>].

Despite the Plaintiff's intention to use Brown's trial testimony to establish that Defendant had a duty to track its trucks, Mr. Brown stopped well short of opining in his deposition that there is indeed a duty for all trucking companies to track their trucks. Instead, in his deposition, Mr. Brown opined that Defendant should have its trucks equipped with satellite-based tracking systems because Defendant advertises on its website that it has the "latest in technology," and Mr. Brown believes that such tracking systems fall into the category of the "latest in technology." [Exhibit 6, p. 137:19 - 138:15, 143:17-23, 145:20-22, 147:2-7]. When pushed on the issue of whether satellite-based tracking systems are truly the industry standard, Mr. Brown waffled. He testified that such systems are "getting to be" the industry standard and that "it may not be totally the industry standard but it's getting closer to it and there's certainly a lot of indication that it is getting to be the trucking – the trucking industry standard, yes." [Exhibit 6, p. 138:16 - 139:3].

Brown later testified that his opinion actually is that, instead of GPS tracking, a trucking company can fulfill whatever obligations he believes it has in this area by supplying its drivers with cell phones. [Exhibit 6, p. 147:23 - 148:6]. It is undisputed that Defendant provided Craig Stephens a Nextel cell phone/radio and that he had it with him during the weekend that he was AWOL. [See Defendant's Brief in Support of Motion for Summary Judgment, Statement of Facts ¶¶ 17, 30]. Thus, Brown has admitted that Defendant fulfilled whatever alleged duty it has in this area.

In no sense will Brown's opinions assist the jury. Defendant is not convinced that even Brown understands what his opinions are. Brown has admitted that Defendant fulfilled whatever duty it had by supplying Craig Stephens with a cell phone. If Brown cannot even opine that Defendant <u>breached</u> a duty, then his testimony as to the underlying duty is unnecessary and will only serve to confuse the issues, mislead the jury, and prolong the trial. Therefore, because Brown's opinions will not assist the jury, they are due to be excluded under

Rules 402, 403, and 702.

Even if Brown's opinions could assist the jury, the opinions still are unreliable. The Plaintiff has made no showing that experts in the trucking industry reasonably rely on out-of-context statements from the internet and insurance company surveys to determine trucking industry standards. Accordingly, the opinions based on these documents should be excluded under Rule 703.

Furthermore, even if the Plaintiff could prove "reasonable reliance" on the documents, the documents simply are not enough to support the sweeping opinions on legal duties and trucking industry standards that Brown intends to offer, and there has been no showing that Brown used reliable methodology to extrapolate his opinions from the documents. In addition, no showing has been made that any of Brown's opinions have been subject to peer review or that they otherwise satisfy any <u>Daubert</u> factor. The opinions therefore must be excluded under <u>Daubert</u> and its progeny and Rule 702.

### 3. **<u>Brown's opinion regarding Defendant's alleged communication policy</u>**.

Mr. Brown has opined that Defendant had a duty to communicate with its drivers every hour and that Defendant's failure to enforce the policy caused the subject accident. It is undisputed that the only basis of this opinion is that Defendant has an internal company document which states "drivers are expected to maintain regular communications with the company while in transit." Brown has arbitrarily interpreted this statement to mean that Defendant's road drivers were required to call in to their respective home terminal every hour and that any driver's failure to do so would cause the driver's immediate termination.

The undisputed evidence in this case is that Defendant's road drivers were required to "call in" only when an unusual situation arose, such as an accident or maintenance problem. It is further undisputed that the dispatch offices at Defendant's terminals are not open at night to accept hourly phone calls, which is when the road drivers, such as Craig Stephens, are on the

road. Despite this, the Plaintiff has attempted to state that, because Craig Stephens did not "call in" every hour during his trip from Pensacola to Atlanta on April 8, 2005, he should have been terminated when he reached Atlanta.

There is absolutely no basis for this opinion other than the conclusory statements of Roland Brown. If Defendant had enforced this policy in such a way, it would have been the first time. Brown's arbitrary interpretation of the term "regular communications" flies in the face of long-established company protocol, and he has offered nothing to support his interpretation. This opinion is based on insufficient facts, and is not the product of reliable methodology or on any reliable application of such methodology. An expert's conclusory statements simply are not sufficient to render the subject of those statements admissible. Accordingly, this opinion is due to be excluded from trial.

    4.    **<u>Brown's opinion regarding scheduled arrival and departure times</u>**.

Another of Brown's opinions is that "a good, safe, prudent trucking company would have scheduled times for departure and arrival at any point...Benton should have had a policy and procedure in place for scheduled times." Brown has offered absolutely no basis for this opinion. Furthermore, the undisputed evidence shows that Defendant does indeed have a policy for arrival times inasmuch as it requires its drivers to proceed directly from point A to point B via the fastest route. For instance, for the Pensacola/Atlanta run, the driver should arrive in Atlanta approximately five hours after departing Pensacola and vice-versa for the return trip. For the subject trip, no evidence has been offered to demonstrate that Craig Stephens should have arrived back in Pensacola at any time other than early in the morning on Saturday, April 9, 2005. Furthermore, there is no evidence that a specifically scheduled arrival time would have prevented this accident. Indeed, the undisputed evidence shows that Craig Stephens was in Montgomery on April 11, 2005, only because he ignored his expected arrival time and instead chose to go AWOL for 48 hours. There is no evidence that the presence or absence of a

specific arrival or departure time was the proximate cause of this accident.  This opinion is irrelevant, and, even if relevant, it is supported only by Brown's unsupported, speculative, and conclusory statements and must be excluded.

### 5. Brown's opinion that Defendant should have had an established plan for searching for AWOL drivers.

Another of Brown's opinions is that Defendant should have had a plan in place as to what to do in the event that a driver goes AWOL, which would have included Defendant calling the Atlanta Police Department first instead of first calling the Florida Highway Patrol.  Again Brown offers nothing in support of this opinion other than his own conclusory statements.  Furthermore, the evidence shows that the Atlanta Police Department would not have acted on a report until a warrant was sworn for Craig Stephens' arrest, which could not have happened until after the accident occurred on Monday, April 11, 2005.  Thus, the timing of the report would have made no difference in this case, and therefore there is no evidence of proximate cause.  This opinion must also be excluded.

### 6. Brown's opinion that Defendant admitted liability because it paid workers' compensation benefits to Stephanie Stephens.

Another of Brown's opinions is that Benton Express has admitted liability because it paid workers' compensation benefits to Stephanie Stephens.  Brown is not qualified as an expert on workers' compensation law or on the effect of workers' compensation payments and/or settlements on pending liability claims.  Because he is not qualified, the opinion must be excluded.  Even if he was qualified, such evidence is due to be excluded on other grounds, as demonstrated in Defendant's objections to the Plaintiff's trial exhibits and in Defendant's motions in limine.

### IV.  CONCLUSION

WHEREFORE, premises considered, Defendant respectfully requests the Court to enter an order excluding M.P. Stirling, Roland Brown, and all of their opinions from the trial of this

action.

        Respectfully submitted,

        s/ Gregory A. Brockwell
        BRETT A. ROSS (ASB-6771-O76B)
        GREGORY A. BROCKWELL (ASB-9949-R49B)

        Attorneys for Defendant Benton Express, Inc.

**OF COUNSEL:**

CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35216
(205) 822-2006
(205) 822-4058 (Direct Facsimile)
E-mail:    bar@carrallison.com
             gab@carrallison.com

## CERTIFICATE OF SERVICE

    I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following on this the 6th day of March, 2006:

Jere L. Beasley
Labarron N. Boone
Julia A. Beasley
BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

        s/ Gregory A. Brockwell
        Of Counsel