IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased, § § § § | |
| Plaintiff, § | |
| v. § § | CIVIL ACTION NO. 2:05cv494-B |
| BENTON EXPRESS, INC., et al., § § | |
| Defendants. § | |

**PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S
EXPERT ROBERT TYNES**

Plaintiff objects to Benton Express, Inc.'s witness, Bob Tynes and, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Federal Rules of Civil Procedure (FRCP) 26(a)(2), 26(b), and Federal Rules of Evidence (FRE) 702 hereby requests that this Court enter an Order excluding Mr. Tynes' testimony in part. As grounds therefore, Plaintiff avers that Benton Express intends to elicit "expert" testimony from Mr. Tynes at this trial – however, such testimony fails to meet the standard of admissibility for expert opinions in Federal Court regarding the issues raised in this case and as such is due to be properly excluded from the trial of this matter.

In short, Mr. Tynes intends to espouse Benton Express' position that Mr. Stephens was not in the "line and scope" of his employment at the time of the wreck under the guise of "expert" opinions. Such an attempt by Benton Express flies in the face of FRCP 702 governing the admissibility of expert testimony which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In this case, as set forth below, it is clear that Mr. Tynes' expert opinions regarding "DOT enforcement" or "line and scope" are unsupported, highly prejudicial, irrelevant, and immaterial to any issue in this case and thus should be excluded.

Mr. Tynes testified that the eight factors that DOT enforcement officers used to determine whether fines are levied against trucking companies are: (1) severity of the harm; (2) whether it is an isolated incident (scope); (3) enforcement history; (4) ability to pay; (5) aggravating circumstances; (6) time since last enforcement; (7) same or similar violation previously cited; (8) whether it involves transporting hazardous materials. The articulated factors above make it abundantly clear that DOT enforcement has nothing to do with whether Craig Stephens was in the line and scope of employment. Additionally, we have no way to verify the foundation or accuracy of the testimony of Mr. Tynes regarding DOT enforcement policies and procedures. Mr. Tynes acknowledges in his deposition that he is unsure of the accuracy of the list above.

> A.    I haven't done enforcement cases since 1999. So let me see if I can remember what those factors are.
> . . .
> A.    That's the best I can remember going back six years.

Tynes dep. p. 239, lines 4-5; 19-20

Accordingly, these are the type of unsupported opinions that Daubert was meant to keep outside the court. How can the Plaintiff cross-examine Benton's expert when he is not

2

even sure of the factors for DOT enforcement and when the information relied on is unavailable to the plaintiff?

Additionally, Bob Tynes' testimony should be excluded because he does not have the industry experience to support his opinion concerning whether an employee of a trucking company is operating his vehicle in the line and scope of employment. Mr. Tynes qualification on this issue is setout as follows:

> Q. Have you ever worked for a trucking company as a dispatcher?
> A. No, sir.
> Q. Ever worked for a trucking company as the fleet manager?
> A. No, sir.
> Q. Ever worked for a trucking company and processed workers' compensation claims?
> A. No, sir.
> Q. Ever designed as an employee of a trucking company a safety policy?
> A. Not as an employee.
> Q. Ever as an employee of a trucking company implemented enforcement of safety policy for a trucking company as your job responsibility?
> A. No, sir.
> Q. Ever as an employee of a trucking company designed a communication policy?
> A. No, sir.
> Q. Ever as an employee of a trucking company implemented or enforced a communication policy for that trucking company?
> A. No, sir.
> Q. Ever been a safety director for a trucking company?
> A. No, sir.
> Q. Ever been an employee of a trucking company and served as the role as the compliance officer?
> A. No, sir.
> Q. Ever been employed in any position as a paid full-time employee or got a W2 from a trucking company in any position?
> A. No, sir.

Tyne at P 65, line 9 through page 66, line 18. Furthermore, Mr. Tynes states he is not here to give opinions concerning whether Craig Stephens was in the line and scope of his employment.

> Q. Now, I noticed in your opinions that one of your opinions in this case involves or touches on whether or not -- let me ask you this way: Do you have any opinions in this case concerning whether or not Mr. Stephens at the time of this wreck was in the line and scope of his employment?
> A. That's up to the Courts to decide.

Tynes' dep. p. 66, line 19 – p. 67, line 1.

> Q. Okay. Once he arrived at the terminal in Atlanta, was he in the line and scope of his employment?
> A. I wish you wouldn't use line and scope. I'm taking it as a legal term that the Court decides.

Tynes' dep. p. 72, line 22 – p. 73, line 2.

Accordingly, we ask the court to exclude Mr. Tynes' testimony concerning DOT enforcement since it is being offered to prove Craig Stephens was not in the line and scope of his employment at the time of this wreck. If it is not being offered for that purpose, then it is completely immaterial and irrelevant.

Mr. Tynes testified his role is simply to provide opinions concerning whether the DOT would levy monetary sanctions against Benton Express for FMCSR violations by Craig Stephens. Note however, DOT enforcement is not even an issue unless there is a violation of FMCSR. Mr. Tynes admits that he has no evidence of any Federal Motor Carrier Safety violations by Craig Stephens that would even prompt any DOT enforcement. So how is DOT enforcement relevant to any issue in this case? More importantly, when asked to identify any Federal Motor Carrier Safety Regulations, Codes, or laws that set out the DOT enforcement criteria for a trucking company he stated he cannot. He further testified that the written policies and procedures that he relies on concerning DOT enforcement of the Federal Motor Carrier Safety Regulations are unavailable. After further questioning, he stated that these written policies and procedures that he allegedly relies on are the property of the government and are

confidential; thus, the guidelines are unavailable. Mr. Tynes stated as follows to Plaintiff's questions concerning the policies and procedures he relies on:

> Q. Show me in here these regulations that would make you conclude that DOT wouldn't hold Benton responsible.
> A. There's nothing in the regulations. A part of their field operations training manual is part of their procedures and processes internal. That is their elements of proof. And it's not in the regulations. It's in their procedures and practices.
> Q. Do you have a copy of the procedures and practices I can look at and say –
> A. No.
> Q. -- Mr. Tynes is here saying that based on these procedures and practices that DOT wouldn't prosecute. And I understand it has nothing to do with what the Court is going to say about this matter or a jury. But since we are here, do you have anything to say, "These are the policies and procedures that I'm relying on to say when the DOT would prosecute"?
> A. No. I've taught it for 25 years. I don't have a copy of their training manual.
> Q. Have you ever relied on this training manual before?
> A. For what?
> Q. Any opinions you've ever had in any case.
> A. No. I know what DOT does. I worked for them for all those years, so their training manual is a part of what they do and what they follow when they do it.
> Q. Right.
> A. And, yes, many times.
> Q. Now what I'm saying is: It's a document, a training manual. You used the word training manual. It's a document; right?
> A. Right.
> Q. Do you have a copy of this training manual?
> A. No.
> Q. And in all the cases in your career that you relied on this training manual, nobody asked you to produce this manual you are allegedly relying on?
> A. No.
> Q. No?
> A. They've asked for, but it's not there.
> Q. Have you ever tried to bring this training manual with you to say, "Mr. Boone, I'm not just making this up. Here's the training manual that says it." My job as a lawyer, I have to figure out what your basis is. And right now I'm not

5

|    | disputing whether it's in your head or not. But right now I need to see something so I can read it and say, "Okay. Here's the policies and procedures." So I can go read and study up on it and see why you're saying what you're saying. |
|----|---|
| A. | Field operations training manual is not subject to Freedom of Information. |
| Q. | Not being cute with you, so in other words though, you can say whatever you want to say is in the training manual, there ain't no way I can verify it? |
| A. | No. |
| Q. | Do you follow what I'm trying to say? I'm trying to figure out any way I can verify what you are telling me is in this training manual. |
| A. | Not unless you can get a copy of it somewhere. |
| Q. | Can you get me a copy of it? |
| A. | It's not subject to Freedom of Information. |
| Q. | Do you know if there's any rules or regulations of the government that you could be violating by testifying to policies and procedures that the government will not release? |
| A. | No. |
| Q. | No, you don't know? |
| A. | No. There isn't any that I'm aware of. |
| Q. | So just to move on, in short, all I can do is trust that you are articulating the policies and procedures and there's no way I can verify it? |
| A. | True. |

Tynes at Page106, line 10 through page 113, line 1. In short, Mr. Tynes cannot be cross examined on these enforcement policies and procedures since we simply have to take his word. Even if there were written policies and procedures, this testimony is completely irrelevant since he states he is only rendering opinions concerning the criteria that would cause DOT to fine Benton Express for violation of Federal Motor Carrier Safety Regulations by its drivers. In fact, he stated that DOT's authority to fine trucking companies for FMCSR violations was based on the frequency of the violation, e.g. five log violations may not be significant if you have one thousand drivers. DOT enforcement has nothing in the world to do with whether Craig Stephens was in the line

6

and scope of his employment at the time of this wreck. DOT enforcement has nothing to do with any issue in this case and will simply be confusing and misleading to the jury. Accordingly, it would be unduly prejudicial for this court to allow Mr. Tynes to offer unsupported opinions that are irrelevant and immaterial to any issue in dispute in this case. At first the Plaintiff did not have a clue why Benton designated Mr.Tynes to address the pivotal issue in the case, whether Craig Stephens was in the line and scope of his employment, when he has no actual industry experience in that area. After a careful review of his testimony, Plaintiff realized Benton is attempting to impermissibly bootstrap Mr. Tynes unsupported opinions that Benton would not have been fined by the DOT in hopes the jury will infer that if DOT would not have fined Benton then that must mean Craig Stephens was not acting within the line and scope of his employment. If the DOT would not have fined Benton for Craig Stephens' acts, then the jury should not either. Any such testimony would be unduly prejudicial, misleading, irrelevant and immaterial to the issue the jury will have to resolve – whether Craig Stephens was acting within the line scope of his employment.

Mr. Tynes also testified when asked if he ever wrote any articles, prepared any training materials, or seminars concerning DOT enforcement, Mr. Tynes stated that he had. When asked if he brought them to the deposition, he stated that they were on his computer, which crashed. (Tynes dep. p. 8, lines 7-14). It is clear Mr. Tynes has no foundation for his conclusions or is unwilling to make available information used to support his opinions. Tynes dep. p. 106, line 10 – p. 113, line 1.

Mr. Tynes admits that he does not have an opinion concerning whether Craig Stephens was acting within the line and scope of his employment.

7

> Q. Now, I noticed in your opinions that one of your opinions in this case involves or touches on whether or not -- let me ask you this way: Do you have any opinions in this case concerning whether or not Mr. Stephens at the time of this wreck was in the line and scope of his employment?
> A. That's up to the Courts to decide.
>
> . . .
>
> A. There's no violations for the determination as to whether they are or not. I know you are trying to get me to say something about line and scope, and that's a term that is for you guys, for the Courts to decide, not for DOT or anybody else.
> Q. And not for you?
> A. And not for me.

Tynes dep. p. 66, line 19 – p. 67, line 1; see also p. 151, line 19 – p. 152, line 1.

He admits that he is simply giving opinions concerning DOT enforcement policies and procedures. And Mr. Tynes acknowledges that there is no way for anyone to verify the veracity of his opinions since the policies and procedures he relies are confidential. (Tynes dep. at Page106, line 10 through page 113, line 1). Accordingly, these highly prejudicial, irrelevant, and immaterial opinions based allegedly on a policy and procedure manual Mr. Tynes cannot produce are not admissible according to Rule 26 of the *Federal Rules of Civil Procedure,* since the opinions are unsupported and Plaintiff does not have the ability to cross examine the witness. There is no way to avoid the inescapable conclusion that a jury will either be very confused by this testimony or draw the improper inference that Mr. Stephens was not acting in the line and scope of his employment, since DOT would not fine Benton. Benton Express tries to get around Mr. Tynes' lack of actual industry experience concerning "line and scope" by having him state that he is not giving such an opinion, he is simply giving opinions about DOT enforcement.

> Q. Now, I noticed in your opinions that one of your opinions in this case involves or touches on whether or not -- let me ask you this way: Do you

8

                  have any opinions in this case concerning whether or not Mr. Stephens at the time of this wreck was in the line and scope of his employment?
A.      That's up to the Courts to decide.

. . .

A.      There's no violations for the determination as to whether they are or not. I know you are trying to get me to say something about line and scope, and that's a term that is for you guys, for the Courts to decide, not for DOT or anybody else.
Q.      And not for you?
A.      And not for me.

Tynes' dep. p. 66, line 19 – p. 67, line 1; p. 151, line 19 – p. 152, line 1.

Based on Mr. Tynes testimony that he does not have any opinion concerning whether Craig was acting in the line and scope of his employment his testimony should be excluded. (Tynes dep. p. 66, line 19- p. 67, line 1; ; p. 151, line 19 – p. 152, line 1).

Once again, DOT enforcement has nothing to do with whether or not an employee is in the line and scope of his employment. Accordingly, this expert should not be allowed to testify when he essentially tells the court to "trust me" on my opinions concerning DOT enforcement. Accordingly, this highly prejudicial testimony would not be helpful to this Court or the trier of fact will only confuse the issue.

Mr. Tynes admitted that Mr. Stephens had permission to be in the truck; he had permission to leaving Pensacola heading to Atlanta; he had permission to leave Atlanta heading back to Pensacola with a load. On the day of the wreck, he was an employee of Benton in a Benton truck; he was hauling the load for Benton. He was on his normal route back to Pensacola. Even though Mr. Tynes says he is only here to discuss DOT enforcement, which has no relevance to this case, it does seem clear, based on his

9

testimony that he has done much more than a capable job of establishing for Plaintiff that Mr. Stephens was in the line and scope of his employment.

## CONCLUSION

Because Mr. Tynes has failed to support his opinions, failed to consider the factual testimony, has not provided the manual he relies on to support his opinions in this case, Mr. Tynes' opinions are not based on reliable principles or methods. As a result, this Court cannot apply any of the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), designed to assess the reliability of expert testimony. Among those factors (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense **or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;** (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. (*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), *Federal Rules of Evidence 702*, Advisory Committee Notes). Clearly, there is no way to assess the reliability on any of his opinions since the policies and procedures he relies on are unavailable.

Consequently, pursuant to *Federal Rules of Civil Evidence 702* and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and based on his own testimony, Plaintiff objects to Mr. Tynes as a witness in this case and move this Court for

an Order prohibiting him from offering expert opinions concerning DOT enforcement on "line and scope."

/s/ LaBarron N. Boone
LABARRON N. BOONE
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 (Telephone)
(334) 954-7555 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following on this the 6th day of ~~February~~ March 2006.

/s/
OF COUNSEL

Gregory A. Brockwell
Brett A. Ross
Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, AL

11