**DEFENDANT'S MOTION IN LIMINE NUMBER 15**

**EXHIBIT 1: Deposition of Boyd Don Hammonds**

Page 136

1  hour of leaving the -- after he left
2  Pensacola he didn't respond, wouldn't that
3  alert somebody if the policy and procedure
4  was to respond in one hour?
5           MR. BROCKWELL:  Object to the
6  form.  Calls for speculation.
7       A.    It's a predescribed run, as
8  previously said.  There is no reason to
9  discuss where you're at every hour.
10      Q.    I thought the reason for
11 wanting to know where the driver is at is to
12 make sure the load is going to make it and
13 on time?
14      A.    He's dispatched from origin to
15 destination and from destination back to
16 origin.
17      Q.    You all advertise to y'all's
18 customers:  We have technology in place to
19 allow us to track our loads to ensure
20 they're on time.
21      A.    Track the freight.
22      Q.    Yeah.  Track the freight?
23      A.    Uh-huh.

FOSHEE & TURNER COURT REPORTERS

Page 137

1   Q.   And in this case, he was
2   carrying freight, wasn't he?
3   A.   Yes.
4   Q.   And you all are not talking --
5   But that don't apply to freight when it's on
6   the road?
7   A.   No.
8   Q.   That just applies to city
9   freight?
10  A.   That applies to freight as for
11  bar scanning and out for delivery.
12  Q.   So, it's your -- There's no
13  communication required between the
14  dispatcher or the terminal manager for an
15  on-the-road driver?
16  A.   No.
17  Q.   Let's talk about what Mr. Glen
18  Clark did.  When you were investigating this
19  matter, did you find out exactly the course
20  or route he took when you say he went and
21  looked for Mr. Stephens?
22  A.   No.  It was the regular
23  standard run, standard route.  I didn't