IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HAZEL M. ROBY, as Administratrix of the Estate of RONALD TYRONE ROBY, Deceased, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:05cv494-B |
| BENTON EXPRESS, INC., et al., | § § | |
| Defendants. | § § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

COMES NOW the Plaintiff in the above styled cause and respectfully submits this response to Defendant Benton Express, Inc.'s ("Benton") Motions in Limine. Benton has filed 19 Motions in Limine. For the convenience of the Court, Plaintiff has attempted to respond to them all in this pleading.

### General Objections

Benton's motions are conspicuous in their breadth. At this time, it is premature for the Court to make crucial evidentiary determinations without knowing the context, materiality and relevancy of the vast number of evidentiary issues raised by Benton. "[The Court] can hardly be said to have abused its discretion if it denies a motion asking it to rule on the admissibility of evidence before it knows what the issues and circumstances are." *Banner Welders, Inc. v. Knighton*, 425 So. 2d 441, 446 (Ala. 1982). Thus, Plaintiff respectfully requests that this Court deny Benton's motions and/or defer ruling on these matters until these issue arise at trial.

1.    **Excluding any reference to the size or financial composition of Carr, Allison.**

Plaintiff's counsel has no intention of making reference to the issues raised by Benton in this motion. However, Benton's attorneys should also not be allowed to make similar arguments with respect to Plaintiff's firm.

2.    **Excluding any reference to Benton's financial position or corporate status during the liability phase of the trial.**

Plaintiff agrees not to make mention of wealth, worth or financial condition of Benton unless the Defendants open the door for such evidence.

3.    **Excluding any reference to Benton's insurance coverage or its limits.**

Plaintiff agrees not to make mention to liability insurance of Defendant Benton in the liability phase of the case. However, Plaintiff has the right to ask potential jurors during voir dire if they or any of their relative owns stock or worked for the subject insurance carriers. *Alabama Power v. Benner*, 459 So. 2d 827 (Ala. 1984); *see also Cooper v. Bishop Freeman*, 495 So.2d 559 (Ala. 1986).

4.    **Excluding news accounts of accident or concerning status of DOT enforcement in Alabama.**

Plaintiff respectfully requests that this Court deny Defendant's motion in limine since such a blanket exclusion of any mention of news accounts of the subject accident is improper. If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exist some other purpose for which is it not

admissible. *Perry v. Mobile Co.* 527 So.2d 720 (Ala. 1988). A party may ask for a limiting instruction that specifies the limited purpose for which the evidence is offered. This blanket exclusion is improper since news reports are certainly a question that any reasonable and prudent party would want to ask during the jury selection process.

The Defendant further argues that the news' account of the subject wreck is irrelevant, immaterial and prejudicial hearsay and should be excluded without stating why this evidence is irrelevant, immaterial and prejudicial hearsay. Evidence is admissible when it is relevant to any matter at hand. If there is factual information that is gathered in a news report that is material and relevant, then the Plaintiff should have the right to properly offer that evidence. Thus, Defendant's motion should be denied.

**5.    Excluding any reference or testimony regarding pending or settled claims for damaged freight.**

Plaintiff respectfully requests this Court deny Defendant's motion in limine.    If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exist some other purpose for which is it not admissible. *Perry v. Mobile Co.* 527 So.2d 720 (Ala. 1988). A party may ask for a limiting instruction that specifies the limited purpose for which the evidence is offered. This evidence will be offered for another purpose, i.e., to establish the wreck occurred in the line and scope of Benton's driver employment.  Additionally, it is relevant for impeachment purposes.

Benton's assertion that this subject matter is precluded by Fed. R. Evid. 408 is misplaced. There is no evidence that Benton's decision to pay claims to customers was an offer of compromise. ). Benton itself characterizes this evidence as "the Company's

standard procedure." "For Rule 408 to apply, there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim." *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th. Cir. 1985).Fed. R. Evid. 408 relates to offers of compromise relating to the claims in the lawsuit:

> Evidence of ...a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount...This rule is designed to encourage settlements by fostering free and full discussion of the issues. id.

*Ramada Development Co. v. Rauch*, 644 F. 2d 1097, 1106 (5th Cir. 1981). This freight claims involve Benton and its customers. These claims where not paid as a result of this lawsuit. Thus, the rule is inapplicable to this matter.

This evidence is also relevant to the question of whether Craig Stevens was acting within the line and scope of his employment. All evidence which tends to make the matter more or less probable under the Federal Rules of Evidence 401 is generally admissible. Under the "other purpose doctrine" evidence that is generally excluded can become admissible if it tends to prove a matter of consequence. The payment of claims does tend to prove a matter of consequence in the case, i.e., Benton's paid the damage freight claim because its employee was operating its vehicle in the line and scope of his employment.

It is important to note that Benton has argued in this case, at one point, that Mr. Ronald Roby or some third party caused this wreak. Accordingly, Plaintiff should be allowed to argue that Benton paid the freight claim and never filed any claims or cross claims against any third party for the damaged freight.

Furthermore, a matter may be made material by the proof elicited at trial. *Smith v. State*, 797 So. 2d 503, 535-36 (Ala. Crim App. 2000). Any premature exclusion of this evidence is inappropriate, particularly when the defendant alleges that its employee, Craig Stephens, was not operating his vehicle in the line and scope of his employment.

This evidence also is admissible for impeachment purposes. Based on defenses Benton has raised, Plaintiff believes Benton will argue that the wreck was some how caused by Mr. Roby or a phantom vehicle. If that is the case, Benton should have refused to pay the claims or at least filed a cross claim against the third party responsible for the loss, i.e., offered for impeachment purposes. Thus, Defendant's motion to dismiss should be denied.

**6.    Excluding any reference or testimony of claims by the Alabama Department of Transportation for road damage.**

Plaintiff's respectfully requests this Court deny Defendant's motion in limine for the same reasons set out in Plaintiff's response to motion in limine Number 5. Defendant's assertion that Fed. R. Evid. 408 preclude such evidence is misplaced. There is no evidence that Benton's decision to pay the Alabama Department of Transportation for road damage was an offer of compromise. "For Rule 408 to apply, there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim." *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th. Cir. 1985). Benton itself characterizes this decision to pay as "company policy and internal protocol." Thus this claim was not paid as a compromise but paid because of internal company policies.

Furthermore, Fed. R. Evid. 408 only relates to offers of compromise relating to the claims in the lawsuit:

> Evidence of …a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount…This rule is designed to encourage settlements by fostering free and full discussion of the issues.

*Ramada Development Co. v. Rauch*, 644 F. 2d 1097, 1106 (5th Cir. 1981). Here, we have claims for damage to I-85 and I-65 by the Alabama Department of Transportation. On the other hand, this case involves a wrongful death claim against Benton.

This evidence is also relevant to the question of whether Craig Stevens was acting within the line and scope of his employment. It is illogical for Benton to pay damage claims if they are not responsible. Furthermore, these payments refute Benton's argument that someone else caused the wreck, as they suggested during discovery. It would be improper to allow Benton to argue that someone else caused this loss and bar the Plaintiff from introducing evidence that Benton paid for the loss. This evidence is admissible for impeachment purposes. If Benton's employee was not operating his vehicle in the line and scope of his employment, Benton could have simply refuse to pay the claim.

This evidence is also relevant to punitive damages. It is important to note that Benton has argued in this case, at one point, that Mr. Ronald Roby or some third party caused this wreak. Accordingly, Plaintiff should be allowed to argue that Benton never field any claims or cross claims against any third party for the cost of the loss of freight. Now, Benton is hoping that this Court will exclude evidence that would reveal that its conduct deserves punishment under the wrongful death statute in Alabama which is meant to punish and deter. It cannot be argued that Benton's conduct during the course of

this case is not relevant. The jury should not be barred from hearing about the conflicting position taken by Benton. Thus, Defendant's motion in limine should be denied since the evidence is relevant to damages and for impeachment.

### 7.   Excluding any reference to the workers' compensation settlement of Stephanie Stevens.

Plaintiff respectfully requests this Court deny Defendant's motion in limine. Benton's assertion that this evidence is precluded by Fed. R. Evid. 408 is misplaced. There are exceptions to every general rule of exclusion. The "other purpose doctrine" allows evidence generally excluded, if it is offered for another purpose that is relevant and material to elements of the claim at issue. If an item of evidence is admissible for one purpose, it will be received in evidence despite the fact that there exist some other purpose for which is it not admissible. *Perry v. Mobile Co. 527 So.2d 720 (Ala. 1988)*. Benton may ask for a limiting instruction that specifies the limited purpose of the evidence. In this case, Plaintiff must prove Craig Stephens was operating his vehicle in the line and scope of his employment. Thus, Plaintiff introduction of evidence that Defendant paid workers' compensation claims are offered for another purpose, i.e., to prove Craig Stephens was in the line and scope of his employment at the time of this wreck.

Fed. R. Evid. 408 "**does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness ...**" Fed. R. Evid. 408. Plaintiff intends to offer Benton's payments of workers compensation benefits for another purpose. *See, e.g., Harris v. Aronov Realty Co Inc.*, 723 So. 2d 610 (Ala. 1998).

The other purpose is to prove that Craig Stephens was operation his vehicle in the line and scope of his employment. Id. His widow was not entitled to those benefits if he was not in the line and scope of his employment. *Fla. Stat. Ch.* 440 (2003).

Furthermore, Fed. R. Evid. 408 only relates to offers of compromise relating to the claims in the lawsuit:

> Evidence of ...a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount...This rule is designed to encourage settlements by fostering free and full discussion of the issues.

*Ramada Development Co. v. Rauch*, 644 F. 2d 1097, 1106 (5th Cir. 1981). Here we have a claim made by Benton's employee regarding worker's compensation. On the other hand, our case involves the wrongful death claim of a third party, Mr. Roby.

Under Alabama law and the Federal Rules of Evidence, relevant and material evidence is admissible. Fed. R. Evid. 401. Relevant evidence means evidence having any tendency to make the existence of a fact of consequence to the determination of that action more probable or less probable than it would be without the evidence. Evidence relating to the subject workers compensation claim is relevant because Benton's entire defense rests on whether Craig Stephens was acting within the line and scope of his employment. Florida's worker's compensation statute requires Benton to pay death benefits to Mr. Stephens' widow only if he was within the line and scope of his employment at the time of his death. Thus, this evidence is clearly material and relevant to whether he was operating in the line and scope of his employment.

Benton's only defense in this case is that Craig Stephens was not in the line and scope of his employment. Florida's workers' compensation law is similar to Alabama in

that it only requires payment of workers' compensation benefits if the employee was in the line and scope of employment. Accordingly, workers' compensation paid by Benton Express is the quintessential definition of relevant evidence. Fed. R. Evid. 401. Furthermore, it will be unduly prejudicial to the Plaintiff to allow Benton Express to claim that Craig Stephens was not operating within the line and scope of his employment but on the other hand pay funeral expenses for his death and workers' compensation payments for his death. Thus, Defendant's motion to dismiss should be denied.

Additionally, evidence of workers' compensation payments or settlement is admissible for impeachment. Benton thought its' corporate representative claims Craig Stephens was not in the line and scope of his employment at the time of this wreck. Surely, Plaintiff should be allowed to ask Benton why would they pay workers' compensation benefit to the deceased employee's widow if he was not in the line and scope of his employment. Similarly, Benton claims Craig Stephens was fired on Sunday. If that is true, no benefits should have been paid on behalf of the deceased employee who was fired and had stolen the vehicle. Thus, this evidence is permissible for impeachment purposes.

8. **Excluding any evidence of payment of funeral expenses for Craig Stephens.**

Plaintiffs respectfully request that Benton's motion be denied. Benton's assertion that this evidence is precluded by Fed. R. Evid. 408 is misplaced. This rule only applies when an actual dispute is involved between the parties. Mrs. Roby, the plaintiff in this case, was not involved in anyway with any payment made to Benton's employee widow. "For Rule 408 to apply, there must be an actual dispute, or at least an apparent difference

of opinion between the parties, as to the validity of a claim." *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th. Cir. 1985).

Rule 408 states that it **"does not require exclusion when the evidence is offered for another purpose ...."** Fed. R. Evid. 408. Plaintiff intends to offer evidence that Benton paid workers funeral expenses for another purpose. The other purpose is to prove that Craig Stephens was operation his vehicle in the line and scope of his employment. Otherwise, his widow was not entitled to those payments. Further, this will not prejudice Benton since they have an opportunity to respond and tell the jury their reasons for paying. Fed R. Evid. 408 relates to offers of compromise relating to the claims in the lawsuit:

> Evidence of ...a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount...This rule is designed to encourage settlements by fostering free and full discussion of the issues.

*Ramada Development Co. v. Rauch*, 644 F. 2d 1097, 1106 (5th Cir. 1981). Here we have some funeral expenses being paid by the employees' company. On the other hand, this case involves a wrongful death action by Mrs. Roby. She was not a party to the any dispute concerning involving the payment of benefits arising out the worker's compensation claim.

Additionally, evidence of workers' compensation payments or settlement is admissible for impeachment. Benton thought its' corporate representative claims Craig Stephens was not in the line and scope of his employment at the time of this wreck. Surely, Plaintiff should be allowed to ask Benton why would they pay workers' compensation benefit to the deceased employee's widow if he was not in the line and

scope of his employment. Similarly, Benton claims Craig Stephens was fired on Sunday. If that is true, no benefits should have been paid on behalf of a person who was fired and stole the vehicle. Thus, this evidence is for impeachment purposes. It would be unduly prejudicial to allow Benton to argue it reported the vehicle stolen and did everything it could to prevent this wreck, but not allow the Plaintiff to rebut this contention by showing Benton obviously considered Craig Stevens in the line and scope of his employment or Benton would not have paid workers' compensation benefits. Thus, Defendant's motion to dismiss should be denied.

9.    **Excluding any reference to the details concerning the manner of death of Ronald Roby.**

This motion is too broad, thus must be denied. Motions in limine are meant to exclude specific evidence and should not be used as shotgun to exclude a category of evidence. Plaintiff is unsure what specific evidence Benton is trying to exclude. Does Benton mean Plaintiff cannot discuss the driver's actions leading up to this wreck? At this time, it is premature for the Court to make crucial evidentiary determinations without knowing the context. Plaintiff will lay the proper foundation for any evidence relating to the death of Ronald Roby.

For purposes of determining damages in this wrongful death claim, it is essential that the jury is made aware of the circumstances of Ronald Roby's death and Benton's conduct. According, Defendant's motion is due to be denied since the evidence is material and relevant to damages.

10.    **Excluding any reference regarding past logbook discrepancies.**

Plaintiff respectfully requests that this Court deny Defendant's motion in limine to preclude reference or testimony of past logbook discrepancies. The Federal Motor Carrier Safety Regulations require Benton to keep accurate logs. One purpose of this rule is to prevent needless deaths caused by operator fatigue. Benton's failure to enforce good safety practices and prevent these violations of the federal requirement show a lack of corporate control and a failure to properly monitor and supervise the actions and conduct of its drivers. A careful, safe and prudent motor carrier monitors the actions and activities of its drivers. To allow Mr. Stephens to regularly file inaccurate reports shows a lack of concern for the safety of the motoring public and a lack of corporate focus on safety.

Plaintiff claims that Benton failed to properly supervise its employees and that failure caused this horrific wreck. This evidence is relevant to Benton's failure to control, monitor, and supervise the conduct of its' drivers.   Furthermore, evidence is admissible for impeachment and to refute Benton's claim that Craig Stephens was outside the line and scope of his employment. Benton Express routinely overlooked clear log violations in the past. This evidence tends to prove Benton didn't believe the vehicle was stolen. This evidence also tends to prove Benton did not follow good safety practices.

Plaintiff intends to show that Benton set this wheels in motion for the horrific wreck by allowing or requiring its drivers to violate the Federal Motor Carrier Safety Standards that are in place to protect the public. Stephen's logbooks show Benton routinely overlooked violations of its employee   Benton's failure to comply with federal regulations shows a pattern and practice of disregarding safety rules, which endangered the motoring, public. Thus, this information is clearly relevant to the punitive damages in

this case. Punitive damage is meant to punish and deter the wrongdoers. Benton's failure to enforce safety policies and proceeds caused this wreck.

Plaintiff has the burden to prove punitive damages are warranted in this case. Plaintiff assures the Court that Benton will try to make the jury believe it was a company that put safety first and did everything it could to prevent this wreck. Accordingly, this evidence is admissible for impeachment purposes. Plaintiff intends to offer this evidence to rebut Benton argument that they acted as a reasonable prudent company.

Plaintiff is not offering the evidence to prove the character of Craig Stephens but to show that Benton's attitude toward safety.   Additionally, this evidence is offered to show how Benton's failure to enforce or implement safety policies and procedures caused this wreck.  In short, this evidence will show Benton's disregard for the safety of the motoring public.

**11.    Excluding any evidence that Craig Stephens was driving erratically and/or at excessive speeds prior to the accident.**

Plaintiff respectfully requests that Court deny Defendant's motion in limine. The conduct of the driver is specifically important in a case where punitive damages are the allowed. Since punitive damages are meant to punish and deter the wrongdoers and others similar situated, the Plaintiff is entitled to show the wrongfulness of the Defendants' conduct. The Court should note Benton claimed, at one time, in this case that Mr. Roby was on I-85 or some phantom vehicle caused the Benton truck to wreck. Additionally, Benton will try to make the jury believe that they were a company that put safety first. Based on Benton's safety policies, it had governors on it vehicle that capped

the maximum speed between 62 – 65 mph for safety reason. However, Mr. Stephens was driving his vehicle in excess of 70 mph. Thus, this evidence further shows Benton's disregard for the safety of others. In short, this evidence is relevant to punitive damages and for impeachment purposes.

The wrongfulness of Defendant's conduct clearly depends on whether its' driver was sleepy, under the influence drugs, driving reckless, or speeding. Craig Stephens' erratic driving behavior is indicative of a driver who had a limited amount of sleep, or one who was under the influence of cocaine. The jury should know the circumstances surrounding this wreck to decide the appropriate amount of punitive damages.

This evidence also supports Plaintiff's contention that Benton knew, based on Craig Stevens' logs, that he was operating his vehicle at excessive speeds. For the purpose of determining punitive damages in this wrongful death claim, the jury should know the circumstances surrounding this tragedy. According, Defendant's motion is due to be denied. Thus, Defendant's motion is due to be denied.

**12.    Excluding evidence that Tony Stephens' suspension from the Alabama State Troopers Department for sexual misconduct.**

Plaintiff respectfully requests that this Court deny Defendant's motion in limine. This evidence is clearly relevant to Tony Stephens' creditability and integrity. Plaintiff has the right to ask questions regarding his suspension if it goes to his creditability or his truthfulness:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation … may only refer to character for truthfulness or untruthfulness … Specific instances of

conduct … may…be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness …

Fed. Evid. R. 608. Under the Federal Rules of Evidence, any witness that takes the stand opens the door to evidence of his character which is relevant to his truthfulness. Fed. R. Evid. 404(a)(3). Benton argues, without any proof, that the suspension was for sexual misconduct not involving Tony Stephens' workplace. Plaintiff believes that the suspension had to do with honest and integrity, not whether or not he was unfaithful to his wife. It is not logical for an employee to be suspended for having a sexual affair no matter how morally inappropriate the conduct. State agencies are not in the business of policing the moral conduct of its employees. Accordingly, Plaintiff respectfully submits that it would be improper to prevent Plaintiff from trying to impeach the creditability or the truthfulness of the subject witness through cross-examination. Thus, Defendant's motion is due to be denied.

**13.    Excluding any reference that Benton had a duty to track its trucks.**

Plaintiff respectfully requests that this Court deny Defendant's motion in limine. Plaintiff intends to present evidence that Qualcom/GPS is commonly used in the trucking industry to impeach Benton's corporate representative. Benton's corporate representative stated that he was not familiar with how Qualcom/GPS works. GPS has been used for over twenty years by the trucking industry to track its vehicles. Accordingly, Plaintiff will use this evidence to attack Benton's corporate representative's credibility. The jury may conclude that he is not believable or trustworthy is he is willing to lie about something like this. This evidence will alternatively show that Benton's failure to keep up

with good sound safety practices in the industry. A jury could determine it is inexcusable for Benton to allow an 80,000 lbs tractor-trailer to disappear for over two days.

Even if the only claim alleged in this case were Respondent Superior, evidence of Benton's failure to have a policy in place that would allow it to locate an 80,000 lbs tractor-trailer would be relevant to punitive damages. Accordingly, the Plaintiff must show that Benton's conduct warrants the imposition of punitive damages. The jury has to have some basis to determine what conduct warrants punishment in order to render a punitive damages verdict. If Benton does not have any effective method in place to prevent such wrecks from occurring, then the jury should be able to consider that. A jury could determine Benton's failure to have a safety plan in place to communicate with or track its trucks show a total disregard for the safety of the motoring public. A jury could further conclude a prudent company would have a plan in place to locate an 80,000 lbs tractor-trailer that can be used as a weapon of mass destruction.

Thus, this evidence is clearly relevant to Plaintiff's claim that Benton failed to act as a reasonable prudent company would act that was concerned about the safety of the motoring public. Thus, Defendant's motion must be denied.


**14.    Excluding any reference that Benton had a duty to maintain and enforce a communications system.**

Plaintiff respectfully requests that this Court deny Defendant's motion. Whether Benton had such a duty is at issue in this case. Even if the only claim alleged was under Respondent Superior, evidence of Benton's failure to have any policy in place that would allow it to locate an 80,000 lbs tractor-trailer would be relevant to punitive damages. The

issues in this case are whether Craig Stephens was in the line and scope of his employment at the time of the wreck, and if so, what amount of punitive damages is appropriate. Accordingly, Plaintiff must prove Benton's conduct warrants the imposition of punitive damages. The jury is entitled to know whether Benton had any effective method in placed that would allow it to prevent such wrecks. A jury could hold that Benton's failure to have a safety plain or policy to communicate with or to track its trucks shows total disregard for the safety of the motoring public.

This evidence is also admissible for impeachment purposes to refute Benton position that it acted as a reasonably prudent company. Plaintiff should be allowed to attack the credibility or impeach any witness concerning other reasonable method that would have allowed Benton to prevent this wreck. A reasonably prudent company would have a plan in place to communicate with or track an 80,000 lbs tractor-trailer that can be used as a weapon of mass destruction. Thus, Defendant's motion must be denied because this evidence is also proper for impeachment and relevant to punitive damage.

**15.    Excluding any reference that Benton advertised the ability to track its trucks.**

Plaintiff respectfully requests that this Court deny Defendant's motion. Benton argues its' advertisement should not be referenced. Plaintiff intends to present evidence that Qualcom/GPS is commonly used in the trucking business to impeach Benton's corporate representative. The corporate representative stated that he was not familiar with how Qualcom/GPS works. GPS has been used for over twenty years by the trucking industry to track its vehicles. Accordingly, Plaintiff will use this evidence to attack Benton's corporate representative's credibility. The jury may conclude that he is not

17

believable or trustworthy if he is willing to lie about something like this. This evidence will also show that Benton's failure to keep up with industry standards is the reason it loss an 80,000 lbs tractor-trailer for approximately two days. A jury may determine that it is inexcusable for Benton to allow this tractor-trailer to disappear for over two days. Thus, this information is relevant to punitive damages.

One of Plaintiff's claims involve the question of whether Benton had a duty track its' vehicles. Plaintiff has asserted that one of the basis for Benton's duty is established by their advertisement. Benton's advertisement states as follows: "[h]ere at Benton, we push to provide the most current technological advancements and use the most modern and well-maintained fleet of equipment." Thus, this evidence is relevant as to whether Benton owed a duty. And even if Plaintiff only alleged a claim against Benton under Respondent Superior, this evidence would be admissible because Plaintiff has a duty to prove Benton's wrongful conduct in order to recover punitive damages. Accordingly, Benton's failure to have the latest equipment to track it equipment is relevant to punitive damages. Especially since Benton's expert has testified that if Benton had used such technology, this wreak could have been prevented. *See depo Bob Tynes.* A jury could also conclude that a reasonable, prudent carrier would have some measure in place that would allow it to track its equipment as advertised. Thus, punitive damages are warranted.

The jury should have a right to look at the literature and draw its own conclusion as to what it says or infers. This evidence is relevant to whether Benton lived up to the high standards it boasted about in its' advertisement. Thus, Defendant's motion is due to be denied since it is a proper matter for impeachment under Fed. R. Evid. 608 and 613

and it will assist the triers of fact in determining punitive damages, i.e., whether Benton acted as a reasonable prudent company.

## 16.    Excluding any reference that Benton's drivers are required to call in every hour.

Plaintiff respectfully requests that this Court deny Benton's motion. This evidence is relevant to the issue of punitive damages since Benton's call in policy was not enforced or even understood by its employees. Plaintiff's Response to Benton's Motion for Summary Judgment cites numerous examples of Benton's policy and the employee's misunderstanding. For instance, "Benton specifically requires its drivers to stay in 'regular communication with dispatch." (Plaintiff's Opposition to Defendant Benton's Motion for Summary Judgment). Benton's V.P. of Safety, regional manager, terminal manager, nor any truck drivers questioned could explain why the phrase "regular communication" did not apply to all drivers. *Id.* [Plaintiff must be allowed to prove punitive damages are warranted in this case. Plaintiff assures this Court that Benton will try to make the jury believe that they are a company that puts safety first.]

This evidence is also admissible for impeachment purposes under Fed. R. Evid. 608 and 613, since Benton takes the position that they acted as a reasonably prudent company should have acted. At the bare minimum, whether Benton's policy was to have its drivers call in every hour is a question in dispute and is clearly relevant.

Thus, Defendant's motion is due to be denied since it is proper for impeachment and goes to prove punitive damages. Furthermore, this evidence is relevant to punitive

Plaintiff's counsel has no intention of employing the use of "golden rule" arguments.

**19.    Excluding any reference to other filed Motions in Limine.**

Plaintiff objects to this request because it is not sure what arguments Benton make during opening statement, cross-examination or during the presentation of this cases. The positions and arguments Benton has made may become relevant. Accordingly, it is premature for a court to exclude such information.

LABARRON N. BOONE
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 (Telephone)
(334) 954-7555 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record as shown below on this the 10th day of March 2006.

_____
OF COUNSEL

Gregory A. Brockwell
Brett A. Ross
Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, AL  35216